## No. 18,518.

DOLORES TUBBS ROBINSON *v.*
ASTRID SANDSTEDT TUBBS, ETC.
(344 P. [2d] 1080)

Decided October 19, 1959

Mr. David Rosner, for plaintiff in error.

Mr. Fred W. Mattson, Mr. A. B. Mattson, Mr. Fred W. Mattson, Jr., for defendant in error.

*En Banc.*

Mr. Chief Justice Knauss delivered the opinion of the Court.

The parties to this writ of error appear here in the same order in which they appeared in the trial court. Plaintiff in error will be referred to as claimant and defendant in error as the Estate.

A. Garfield Tubbs, the decedent, died October 27, 1955, leaving a Last Will and Testament dated October 19, 1955, which was duly admitted to probate and record on November 14, 1955. Among the assets of the estate were two apartment houses in Denver which decedent devised to his daughter, the claimant, for her life, with remainder over to her children. The language of the Will is as follows:

"I give, devise and bequeath unto my daughter, Dolores Tubbs Robinson, for and during the term of her natural life the following described real estate, situate in the City and County of Denver, Colorado:

"Lots 24-31, inclusive, Block 102, Colfax Terrace and the improvements thereon known as 1401-1433 Ivy Street;

"Lots 16-23, inclusive, Block 103, Colfax Terrace and the improvements thereon known as 1400-1434 Ivy Street."

It was stipulated and agreed that all rents for the month of October 1955 were collected by decedent and that all subsequent rents were collected by claimant.

The writ of error is directed to a judgment which denied claimant's demand for reimbursement from the estate of the taxes levied by the City and County of Den-

ver for the year 1955, payable in 1956, against the property devised to claimant.

Nothing in this record even remotely indicates an intention on the part of testator that claimant was to receive the property devised to her free and clear of liens, taxes and encumbrances. Testator had paid the taxes due in 1955 and devised his title to the realty to claimant and her children, no more or no less. If it had developed that his title was defective or he had no title at all, she took under the will only what testator owned and is in no position to demand other assets of decedent's estate be used to reimburse her for taxes accrued for the year in which she took possession of the property. It is manifest that under the language of the will, which expressed testator's desires, this devise was a gift, not a conveyance carrying contractural obligations. Claimant took decedent's title to this real estate, without qualification and subject to any burdens or encumbrances existing at the time of his death.

"By virtue of statutory or testamentary provisions a devisee takes the land subject to all the equities and liabilities which affected the testator and with all the burdens of debts or other charges to which real estate is subject. * * * Title does not vest in the devisee before the testator's death. * * * title to land does not pass by will until the will is probated; but it does pass then, and on probate, relates back to, and takes effect as of, the time of testator's death." 96 C.J.S., pages 820-821.

The claimant as devisee of her father took title *cum onere* and subject to the burdens incident to carrying into effect the testator's wishes which stand as an all-sufficient reason for the disposition of his property and cannot be challenged by anyone claiming thereunder.

The annotator of the note in 126 A.L.R., p. 875, says: " * * * there is no doubt but that the ultimate criterion by which to determine whether the life tenant or the remainderman shall pay ordinary taxes on the property is

the intention of the creator of these estates as determined from the terms of the instrument creating them, and various cases have turned largely on the provisions of such an instrument."

In *Dormer v. Walker*, 101 Colo. 20, 69 P. (2d) 1049, this court said:

"As a matter of law, even where the instrument creating the life estate is silent as to these items, it is the duty of the owner of a life estate, who is entitled to receive the rents, issues and profits therefrom, to keep paid all current taxes and assessments which, if left unpaid, may result in a lien effective against the interests subsequent to the estate for life. Restatement of the Law of Property, p. 410, c. 6 §129. It also seems to be the law in the United States, except in the states of Arkansas, North Carolina and Ohio, where more drastic statutes have been enacted, that where this obligation to pay the taxes arises under the terms of the agreement or by operation of law and the owner of the life estate fails to discharge his duty in this respect, the owners of the future interest in the land involved are generally limited, to * * * then follow several alternative remedies which may be resorted to to compel the life tenant to pay the taxes."

In that case the conveyance which created the life estate specially provides that if the taxes were paid within six months after the same became due and payable, then the trust would terminate. In the instant case the will devised the property in question to testator's daughter, without reference to liens, taxes or encumbrances. She took possession and received the rents, issues and profits from the realty commencing November 1, 1955, even before the testator's will was admitted to probate. True, the 1955 taxes were assessed in that year but were not payable until 1956. It is axiomatic that the taxing authority must exhaust the property in its effort to collect delinquent taxes before resorting to a suit against the owner, and no mode other than the statutory

procedure is provided for the collection of delinquent taxes on real property. *Montezuma Valley W.S. Co. v. Bell,* 20 Colo. 175, 36 Pac. 1102; *Mitchell v. Minnequa Town Co.,* 41 Colo. 367, 92 Pac. 678. Hence it is clear that the taxes in question could not have been collected by the county treasurer by filing a claim against the estate.

In *In Re Haukeli's Estate,* 25 Wash. (2d) 328, 171 P. (2d) 199, the widow of a decedent as administratrix sold real estate belonging to her deceased husband. Other heirs objected to the inclusion in her final report to a deduction of the payments made for delinquent taxes against the realty out of the proceeds of the sale. It was contended that the delinquent taxes constituted a charge against the assets of the estate and should not have been deducted from the sale price of the real estate, but paid out of the decedent's personal property.

The court said: "The delinquent taxes against the real property * * * did not constitute an indebtedness of the estate and no claim therefor could be filed against the estate. The owner was not personally liable for the taxes assessed against his real property; those taxes were an obligation in the nature of a lien in favor of the state and county on the land and the statutory method of enforcing same as a lien is exclusive. Taxes assessed against real estate are not a debt or personal liability of the owner of the property." To the same effect is *Barlow v. Cain,* 146 Ark. 160, 225 S.W. 228.

As observed above, claimant took possession of the two Denver apartments devised to her on November 1, 1955, several days before the will was admitted to probate, and has since received all the rents, income and profits thereof. Normally in the course of administration of an estate a life tenant or other devisee is not given possession of realty until the estate is closed, meanwhile the representative of the estate collects the rents therefrom. C.R.S. '53, 152-10-13. Had such been the case here the executrix of the estate would doubtless

have accumulated sufficient funds to discharge the taxes and paid the same from the income of the property as a part of the administration of the estate, and charged claimants therefor.

*In Re Bixby's Estate,* 140 Cal. (2d) 326, 295 P. (2d) 68, 72:

"A specific legacy or devise carries with it all accretions by way of dividends, interest or rents that may accrue after the death of the testator less, however, all taxes and other expenses attributable to the property during the administration of the estate. *In re Estate of Daly,* 202 Cal. 284, 287; *In re Estate of De Barnal,* 165 Cal. 223, 235-236, 131 Pac. 375; *In re Estate of Mc-Sweeney,* 123 Cal. App. 2nd. 787, 790, 268 P. (2d) 107." (Emphasis supplied.)

See, also, *Powell v. Labry,* 210 Ala. 248, 97 So. 707, and *Will of Bresnehan,* 221 Wis. 51, 265 N.W. 93.

The judgment is affirmed.