## No. 20,551.

THOMAS H. SKIDMORE *v.* DONALD O'ROURKE AS TREASURER OF SAN MIGUEL COUNTY, COLORADO.
(383 P. [2d] 473)

Decided June 17, 1963.

Mr. GUY B. DYER, JR., for plaintiff in error.

Mr. C. N. FAIRLAMB, County Attorney, Mr. J. FRED

SCHNEIDER, Mr. RONALD LEE COOKE, Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Associate Counsel, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE parties are before this court in reverse order of their appearance in the trial court. We will refer to plaintiff in error as defendant or Skidmore, and to defendant in error as plaintiff or the treasurer.

The action was commenced by the treasurer to obtain a judgment against Skidmore for $14,764.58, being the amount of taxes assessed and levied, for the years 1954-1961 inclusive, on certain uranium mining claims and producing mine in San Miguel County. The claims and mine were, during said years, operated by Skidmore under a lease agreement with the Atomic Energy Commission. The mine and claims were on unpatented United States lands and assessments of taxes were made annually in connection with said mining operations, all as provided by C.R.S. '53, 137-5-4, from which we quote the following pertinent language:

"(1) *Every person, corporation or association owning or operating any mines or mining claims which shall be a producing mine* * * * shall make out and deliver to the assessor of the county wherein such property is situate a statement showing:

[Here follows a resume of the information to be furnished in that statement.]

"(2) The assessor, when he receives such statement, shall determine *the gross proceeds of any such producing mine or mining claim for said preceding year* * * * and for the purpose of assessment for taxation shall value such producing mine or mining claim at a sum equal to one fourth of the gross proceeds for said preceding year for any such mine or mining claims. * * *.

"(3) In case the mine or mining claim shall *not be patented, or entered for patent,* but shall be assessable and taxable under this chapter on account of producing gross proceeds, *then the possession shall be the subject of the assessment,* and if said mining property be sold for taxes levied, the sale for such tax shall pass the title *and the right of possession to the purchaser under the laws of Colorado;* \* \* \* ." (Emphasis supplied.)

Trial was to the Court upon an agreed statement of facts showing:

"2. Defendant, Thomas H. Skidmore, mined uranium and vanadium ores as a lessee under Atomic Energy Commission lease on the Legin group of claims located in San Miguel county, Colorado, during the period of 1953 through 1961, inclusive.

"3. The mining property in question was owned by the United States of America.

"4. Said mining lease had no provision for the payment of real estate taxes or any obligation relative thereto."

It was further stipulated that the operations conducted by Skidmore for each of the years in question resulted in the production of ores having a stipulated taxable gross value; that during the years in question taxes were levied for said years in the total amount of $14,764.58. It was further stipulated that Skidmore had not paid the taxes assessed and levied.

The trial court entered the following conclusions of law and judgment:

"1. The usual remedy for collection of real estate taxes by sale thereof for payment of the tax lien *is an inadequate and useless remedy* in the case of a taxpayer who holds *only a possessory mining interest* in the property of the United States from which the ore is taken, *which interest cannot be transferred without consent of the United States,* and which interest becomes of less value as ore is removed until it is completely depleted.

"2. *Where the administrative remedy for collection of*

*taxes is inadequate or futile, a personal action will lie against the taxpayer for the amount of the tax.*

"IT IS THEREFORE ORDERED THAT Defendant's Motion to Dismiss is overruled and IT IS ADJUDGED that Plaintiff have and recover of Defendant, the sum of $14,764.58 and costs herein." (Emphasis supplied.)

Skidmore is here by writ of error seeking reversal of that judgment. He contends that the county treasurer in seeking to collect taxes is limited to procedures set up by statute, and that such procedures are exclusive.

█ It is the rule of law in most, if not all, states, including Colorado, that the taxing power of the state is exclusively a legislative function.

In *City and County of Denver v. Lewin,* 106 Colo. 331, 105 P. (2d) 854, this court said:

" 'The taxing power of the state is exclusively a legislative function, and taxes can be imposed only in pursuance of legislative authority, there being no such thing as taxation by implication. Subject to the fundamental or organic limitations on the power of the state, the legislature has plenary power on the matter of taxation, and it alone has the right and discretion to determine all questions of time, method, nature, purpose, and extent in respect of the imposition of taxes, the subjects on which the power may be exercised, and all the incidents pertaining to the proceedings from the beginning to end; and the exercise of such discretion, within constitutional limitations, is not subject to judicial control. * * *.' 61 C. J., pp. 81-83, §10."

The foregoing language was quoted with approval by this Court in *Bartlett and Company v. County Commissioners,* 152 Colo. 388, 382 P. (2d) 193.

The general assembly, in seeking to raise revenue by ad valorem taxes, has, by statutory authority in great detail, delegated to county assessors, county treasurers, boards of county commissioners, the Colorado Tax Commission, and the State Board of Equalization, certain duties to perform in making assessments, levying taxes,

collecting the same, and disposing of the moneys so collected.

County treasurers are constitutional officers, but have no constitutional duties to perform or constitutional authority to do any particular act such as commencing this suit.

Article XIV, Section 8, of the Colorado Constitution provides:

"There shall be elected in each county * * * one county treasurer, who shall be collector of taxes * * *."

In 43 Am. Jur. 68, Public Officers, §249, we find the following general rule governing actions of county officers, a rule applicable to the treasurer in this case:

"In general, the powers and duties of officers are prescribed by the Constitution or by statute, or both, and they are measured by the terms and necessary implication of the grant, and must be executed in the manner directed and by the officer specified. *If broader powers are desirable, they must be conferred by the proper authority. They cannot be merely assumed by administrative officers; nor can they be created by the courts in the proper exercise of their judicial functions.* No consideration of public policy can properly induce a court to reject the statutory definition of the powers of an officer. * * *." (Emphasis supplied.)

In *Farnik v. Commissioners,* 139 Colo. 481, 341 P. (2d) 467, this court said:

"From the record, briefs and appearances before us it appears that Weld County and the aforementioned Association of County Commissioners take the position that counties have power in dealing with real property to do anything and everything unless prohibited by statute. Illustrative of this attitude is the following, taken from the court's conclusion of law, conclusions prepared by counsel for Weld County:

" '5. That the Board * * * had and has full power and authority * * * to make such orders concerning the property of the County as it deems expedient * * * *where no*

*other provisions are made by law.'* (Emphasis supplied.)

" '6. The defendant, The Board of County Commissioners of the County of Weld * * * had full right and authority * * * *unless prohibited or limited by express statute to the contrary.'* (Emphasis supplied.)

" '7. There was and is no statute of the State of Colorado *which limited or prohibited said county from* * * *.'* (Emphasis supplied.)

" '9. There is no provision in Section 137-10-43, C.R.S. '53 which restricted the right of said defendant Board to do *or prohibited* it from doing what it did do, or which *restrict* * * *.'* (Emphasis supplied.)

"The above quotes are repugnant to the well established rule of law that county commissioners are officers with only delegated powers; they possess only such powers as are expressly conferred on them either by the Constitution or statutes, and, in addition, such implied powers as are reasonably necessary to the proper execution of those expressly conferred. *Robbins v. County Commissioners,* 50 Colo. 610, 115 Pac. 526.

"From the above quotes one might conclude that boards of commissioners have unlimited, inherent powers and are limited only as prohibited or restricted by statute. Counties have only such powers as are delegated to them. Their claimed inherent powers are imaginary and lacking in reality."

The parties to this litigation do not contend, nor did the trial court find, that there is any express statutory authority for the treasurer to institute this action to recover a personal judgment for the amount of real estate taxes levied and not paid.

The general assembly has over a period of nearly eighty years adopted legislation designed to assure the collection of taxes due, it has expanded and built up a body of statutory directives for the guidance of county treasurers, outlining in great detail steps to be taken by them calculated to obtain the amount of taxes levied. Statutes fix the times for treasurers to send notices of

taxes due, notice of delinquencies, notice of proposed sales, notice of applications for treasurer's deed, etc. Such statutes are very comprehensive and detailed, even directing treasurers to make assessments under certain circumstances, C.R.S. '53, 137-9-19, and directing treasurers to petition the district court for the appointment of a receiver to take possession of and operate public utilities, whose properties are being advertised fcr sale, and to foreclose the lien of unpaid taxes in cases where there is no bid for the properties at such sale. C.R.S. '53, 137-4-29. It would seem that statutory directives to county treasurers are all inclusive.

The general assembly in 1902 considered the advisability of empowering county treasurers to institute suits for the collection of taxes. A statute was adopted which set forth circumstances and conditions where personal property taxes were not paid, whereupon county treasurers were not only empowerd to, but directed, to "sue the person so taxed." Laws 1902, page 112, C.R.S. '53, 137-9-12. The Thirty-fifth General Assembly in 1945 gave further consideration to this problem of treasurers' suits and amended the 1902 law and expanded upon the conditions and circumstances under which county treasurers *"may* sue the person so taxed." Added was a much needed provision.

"(b) When the County Treasurer deems it advisable to bring suit, *as above* referred to, the County Attorney shall perform such legal work, and the expenses in connection therewith shall be borne by the County." (Emphasis supplied.) — Laws 1902, page 112, as amended by Laws 1945, page 554, C.R.S. '53, 137-9-12.

The foregoing enactments of the general assembly negate any suggestion that county treasurers have inherent, implied or general powers to sue delinquent taxpayers.

The general assembly having exclusive jurisdiction over tax matters, county treasurers may exercise only such powers as have been delegated to them.

The general assembly having delegated to county treasurers the power to institute suits for the collection of personal property taxes; specified the conditions that must prevail as a condition precedent to the filing of suit; designated the courts where suits may be filed; provided for an attorney for the treasurer and stated how and by whom he shall be paid; and having said nothing about suits for the collection of real estate taxes, leads to the inescapable conclusion that it never intended that treasurers commence suits for the collection of real estate taxes.

Procedures for collection of personal and real estate taxes are so different that one can readily understand legislative authorization of suits for collection of personal property taxes, and no such authorization concerning the collection of real estate taxes. Real estate cannot be removed from the county; it can always be found. Statutes provide that personal property can be seized and sold during the year in which taxes become delinquent, whereas owners of real property cannot be dispossessed for more than three years after the taxes become delinquent.

In *Montezuma Valley W. S. Co. v. Bell, etc.*, 20 Colo. 175, 36 Pac. 1102, this court expressly held that a personal judgment for real estate taxes was clearly erroneous; that express statutory procedures set up for collection of real estate taxes were exclusive; pointed out that though statutory procedures for collecting personal property taxes included the right of the treasurer under certain circumstances to sue and obtain a personal judgment for the amount of *personal taxes due,* such did not warrant a judgment for the amount of real estate taxes levied and unpaid. Therein the court said:

"And the manner in which such taxes shall be collected and the realty subjected to the payment of delinquent taxes thereon is specifically provided by other sections of this act. By sec. 2819, provision is made for the collection of taxes levied and assessed upon per-

sonal property by an action of debt against the delinquent taxpayer, under certain conditions, but no mode other than the statutory procedure is provided for the collection of delinquent taxes on real property. * * *.

\* \* \*

"It follows that the judgment rendered, and the decree imposing a lien upon the real estate, are erroneous. The foregoing reasons would not apply to a proper action by the treasurer to recover taxes assessed upon personal property, since by section 2819, supra, an action at law to recover such taxes is provided. * * *."

The foregoing language was quoted with approval in *Mitchell v. Minnequa Town Co.,* 41 Colo. 367, 92 Pac. 678.

In *Robinson v. Tubbs,* 140 Colo. 471, 344 P. (2d) 1080, this court said:

"* * * It is axiomatic that the taxing authority must exhaust the property in its effort to collect delinquent taxes before resorting to a suit against the owner, and no mode other than the statutory procedure is provided for the collection of delinquent taxes on real property. *Montezuma Valley W. S. Co. v. Bell,* 20 Colo. 175, 36 Pac. 1102; *Mitchell v. Minnequa Town Co.,* 41 Colo. 367, 92 Pac. 678. Hence it is clear that the taxes in question could not have been collected by the county treasurer by filing a claim against the estate."

Counsel for the treasurer refer us to *Pinnacle Co. v. The People,* 58 Colo. 86, 143 Pac. 837, as authority sustaining the position of the treasurer here. We find nothing in that case that sanctions the actions of the treasurer here or supports the judgment of the trial court.

In *Pinnacle* we do not have a county treasurer seeking to exercise powers not delegated to him. There the People, the State, brought the action. No one would contend that the State lacks capacity to sue. There the State obtained a personal judgment where there was a personal obligation to pay.

Laws 1902, Chapter 3, Section 65, provide:

"Every foreign corporation * * * shall * * * *pay annually* * * * *to the auditor of the State of Colorado,* a state license tax as follows: Four cents upon each one thousand dollars of its capital stock * * *." (Emphasis supplied.)

In *Pinnacle,* we have an excise tax, and an express duty to pay such tax to the state auditor.

■ County treasurers are only administrative agents of the state, their authority being limited to that expressly delegated by the legislature.

The general assembly, in the exercise of its exclusive powers, has stated who, when and under what circumstances owners of property subject to ad valorem taxes may be sued by county treasurers. We find nothing in any of the acts of the general assembly to sanction the actions of the treasurer in commencing this suit.

It is not a proper function of the judiciary to add to, detract from or impose other conditions governing actions of treasurers.

The holding of the trial court that:

"2. Where the administrative remedy for collection of taxes is inadequate or futile, a personal action will lie against the taxpayer for the amount of the tax." is completely out of harmony with *Montezuma, Mitchell* and *Robinson,* supra, and is an invasion by the judiciary of the exclusive legislative functions dealing with the assessment and collection of taxes, as stated in *Denver v. Lewin,* supra.

The judgment is reversed and the cause remanded to the trial court with directions to dismiss the complaint.

MR. JUSTICE PRINGLE dissents.

MR. JUSTICE DAY does not participate.