QUESTIONS PRESENTED AND CONCLUSIONS
 1. Does the SBOE still have authority to order payback of excess state aid to schools?
Yes.
 2. Does the SBOE have the authority to order that the payback come from an increase in the property tax levy?
 This issue is currently being litigated. Prior to resolution of this issue by Colorado appellate courts, SBOE payback orders should clarify that counties may reimburse the state by levying an additional tax or by any other means permitted by law.
 3. If the SBOE has the authority to issue a payback order, does the SBOE have the authority to issue the payback from specific sources?
No.
BACKGROUND
 I. State Board of Equalization
The State Board of Equalization is a constitutionally created body. It has the responsibility for equalizing valuations for assessment of taxes duty upon the various classes of real and personal property within the state. Colo. Const., art. X, § 15.
Pursuant to article 10, section 3(2)(III)(c) of the Colorado Constitution, the SBOE has authority to order counties whose property tax valuations are not in compliance with constitutional and statutory requirements, as determined by an annual reappraisal study, "to impose . . . an additional property tax" in order to repay state school equalization payments. This constitutional provision was approved by voters in 1982.
Section 39-1-105.5(1)(b)(III), C.R.S. (1994 Supp.), essentially mirrors the constitutional provision. It states in relevant part as follows:
 . . . The state board of equalization shall order
the board of county commissioners to levy, and the board of county commissioners shall levy an additional property tax on all taxable property within the county.
(Emphasis added).
II. 1992 Amendment One
Article X, section 20 of the Colorado Constitution was approved by voters in 1992. A central purpose of the provision, which became effective on November 4, 1992, is to require voter approval for certain state and local government tax increases.Submission of Interrogatories on Senate Bill 93-74,852 P.2d 1, 4 (Colo. 1993). Subsection (4)(a) provides in pertinent part:
 Starting November 4, 1992, districts must have voter approval in advance for: (a) Unless (1) or (6) applies, any new tax, tax rate increase, mill levy above that for the prior year, valuation for assessment ratio increase for a property class, or extension of an expiring tax, or a tax policy change directly causing a net tax revenue gain to any district.
(Emphasis added).
All provisions of 1992 Amendment One supersede conflicting state constitutional, state statutory, charter, or other state or local provisions. Colo. Const., art. X, § 20(1). Further, where multiple interpretations of an Amendment One provision are equally supported by the text of that amendment, a court should choose that interpretation which it concludes would create the greatest restraint on the growth of government. Bickel v.City of Boulder, 885 P.2d 215 (Colo. 1994). A "reasonable restraint" is one which is just and in harmony with existing law. Colorado Common Cause v.Bledsoe, 810 P.2d 201, 206-07 (Colo. 1991).
ANALYSIS
 I. 1992 Amendment One Does Not Affect SBOE's General Enforcement Authority
The provisions of 1992's Amendment One do not affect the SBOE's constitutional and statutory enforcement authority. Only the election provisions of Amendment One potentially conflict with the SBOE's authority to issue payback orders. Even if those provisions are applicable, they do not affect the SBOE's authority to order a payback. Rather, the provisions address the manner or method of payback. Consequently, the SBOE retains authority to issue orders requiring counties to payback excess state aid to schools payments. A contrary conclusion would render meaningless one of the primary purposes of the 1982 constitutional amendments. See, e.g., "An Analysis of 1982 Ballot Proposals," Colorado Legislative Council Research Publication No. 269, pp. 2-3, 6-9 (1982) (one of purposes of amendment was to establish enforcement of uniform valuations for assessment).
 II. SBOE Can Continue to Order Counties to Impose an Additional Property Tax in Connection with Payback Orders
Determination of whether the SBOE retains authority to order counties to impose an additional property tax to reimburse the state for excess state aid to schools depends on whether the provisions of article X, section 3 and article X, section 20 directly, irreconcilably and materially conflict. If Amendment One and article X, section 3 conflict, the provisions of Amendment One prevail. Colo. Const., art. X, § 20(1). If not, then the two provisions should be harmonized, as far as possible.See Bickel v. City of Boulder, 885 P.2d 215 (Colo. 1994); De'Sha v. Reed, 194 Colo. 367, 371,572 P.2d 821, 823 (1971).
 A. Amendment One does not Appear to Conflict with Article X, Section 3
Constitutional provisions should be construed liberally to accomplish their purposes and should be construed if possible to avoid conflict. Colorado Common Cause v. Bledsoe,810 P.2d 201, 206-07 (Colo. 1991). A conflict exists when one provision authorizes what the other forbids or forbids what the other authorizes. Submission of Interrogatories on SenateBill 93-74, 852 P.2d 1, 6 (Colo. 1993) (citing In reInterrogatories Concerning H.B. 1078, 189 Colo. 1, 536 P.2d 308,313 (1975)). Where no conflict exists between constitutional provisions, courts should presume a newly-enacted provision has been "framed and adopted `in the light and understanding of prior and existing laws and with reference to them.'" CarraraPlace, Ltd. v. Arapahoe County Bd. of Equalization, 761 P.2d 197,202 (Colo. 1988) (quoting Krutka v. Spinuzzi,153 Colo. 115, 124, 384 P.2d 928, 933 (1963)).
The issue here is whether Amendment One expressly prohibits what article X, section 3 authorizes. In other words, does Amendment One prohibit the SBOE from ordering counties to impose an additional property tax? Amendment One does not expressly prohibit the imposition of an additional property tax. At most, it requires voter approval prior to imposition of such tax.[1] It is immaterial if the county would be forced to first seek voter approval to comply with the SBOE's directive. Consequently, Amendment One and article X, section 3 are not in direct conflict.
Amendment One can be reconciled with article X, section 3. Amendment One's election provisions can be interpreted as an additional requirement counties must fulfill prior to imposition of the additional property tax. If this interpretation is accepted, the SBOE could continue to order the county to impose an additional tax, and the county could impose the tax if it obtained voter approval.
If voters reject a proposed additional tax, the county would not be excused from compliance with the SBOE's order. No reasonable interpretation of Amendment One would authorize individual voters within a county to reject the obligations of their county pursuant to an SBOE order. See generally Bickelv. City of Boulder, 885 P.2d 215 (Colo. 1994) (an unjust, unreasonable or absurd result should be avoided when construing a constitutional provision).[2] Rather rejection of the tax would only excuse the county from that portion of the SBOE order requiring imposition of an additional property tax. The county would remain obligated to reimburse the State for excess state aid to schools by some other manner permitted by State or local law.
B. Section 39-1-105.5(1)(b)(III) is Constitutional
Legislation which facilitates a constitutional provision is entitled to a presumption of constitutionality. In reInterrogatories Concerning H.B. 1078, 189 Colo. 1, 536 P.2d 314
(1975). A party alleging that a statute is unconstitutional bears the burden of proof to establish beyond a reasonable doubt that the statute is indeed unconstitutional. City ofMontrose v. Public Util's Comm'n, 732 P.2d 1181 (Colo. 1987); Branson v. City County of Denver, 707 P.2d 338
(Colo. 1985).
The language in section 39-1-105.5(1)(b)(III) is very similar to the language used in article X, section 3 of the Colorado Constitution. As previously discussed, the language authorizing counties to impose an additional tax does not appear to directly and irreconcilably conflict with the election provisions of Amendment One.
It should also be noted that even if the portion of the statute authorizing counties to impose an additional property tax is determined to be unconstitutional, the other portions of the statute would still be valid. As a general rule, if a statute is constitutional in one part and unconstitutional in another, the constitutional provision may be sustained and the unconstitutional stricken. Riverton Produce Co. v. State ofColorado, 871 P.2d 1213, 1226 (Colo. 1994) (citing Cityof Lakewood v. Colfax Unlimited Ass'n., Inc., 634 P.2d 52,70 (Colo. 1981)). Here, the portion of the statute regarding the imposition of an additional property tax is easily severable from the remainder of the statute.
 C. Denver District Court has Determined that Amendment One Applies to County Mill Levy Increases Established in Response to SBOE Orders
In Muhm, et al. v. Board of County Comm'rs of ArapahoeCo., et al., Denver District Court Case No. 94 CV 3374 (September 19, 1994), a Denver District Court recently determined that Amendment One applied to a mill levy established by Arapahoe County in response to an SBOE payback order. In that case, Arapahoe County had already reimbursed the SBOE for excess aid to state schools and proceeds from the mill levy were applied to the county's general fund. However, the court noted in dicta that
 [e]ven if the county had not yet reimbursed the State, an increase in the mill levy would still have the effect of increasing the general fund balance, thus producing a net tax revenue gain.
The district court did not address the facial validity of section 39-1-105.5(1)(b)(III). The issue presented inMuhm was whether section 39-1-105.5(1)(b)(III) was unconstitutional as applied by the SBOE to Arapahoe County. The court ultimately concluded that the statute was not unconstitutional as applied to Arapahoe County, because the SBOE's order to Arapahoe County was issued prior to the effective date of Amendment One. However, the court's reasoning implies that the court would have reached a contrary conclusion, if the SBOE's order been issued subsequent to Amendment One's effective date.
D. Conclusion/Recommendation
It is possible that an appellate court will reach a different conclusion with respect to the application of Amendment One in this context. However, in view of the district court's ruling inMuhm, we recommend that future SBOE payback orders be issued in a manner which ensures their validity, regardless of future court rulings regarding the application of Amendment One to this issue. For example, the order could include the following language:
 The State Board orders the Commissioners of [insert county] to reimburse the state for excess state equalization payments made to school districts in the amount of [insert amounts]. The Commissioners shall certify a levy for collection of an additional property tax on all taxable property in the county in an amount sufficient to generate enough revenue to reimburse the state for these amounts, or alternatively, reimburse the state for these amounts by any other methods permitted by law.
 III. SBOE has no Authority to Order Paybacks from Specific Sources
The SBOE has only those powers which are expressly granted to it by the constitution and General Assembly, and those implied powers which are reasonably necessary to carry out its express duties. See generally Skidmore v. O'Rourke, 152 Colo. 470,474-476, 383 P.2d 473, 475-76 (1963) (interpreting authority of county treasurers); Robbins v. County Comm'rs,50 Colo. 610, 615, 115 P. 526, 528 (1911) (interpreting authority of county commissioners). Although constitutional and statutory provisions grant the SBOE authority to order counties to impose an additional property tax, they do not authorize the SBOE to order payback of excess to state aid to schools from any other source. The authority to order paybacks from a specific source is dependent on an express grant of authority to the SBOE.Id.
 SUMMARY
The SBOE has authority to order payback of excess state aid to schools payments. Prior to resolution of Muhm, SBOE payback orders should clarify that counties may reimburse the state by levying an additional tax or by any other means permitted by law. The SBOE does not have authority to order that the payback come from other specific sources.
 GALE A. NORTON Attorney General
 ALESIA M. McCLOUD-CHAN Assistant Attorney General
cc: Merrill Shields Deputy Attorney General
[1] It is unclear whether Amendment One even applies to the property tax at issue here. The SBOE and Arapahoe County argued in Muhm, et al. v. Board of County Comm'rs of Arapahoe Co.,et al., Denver District Court Case No. 94 CV 3374 (September 19, 1994), that Amendment One does not apply to mill levy increases here because an additional property tax implemented pursuant to an SBOE order does not result in an increase to general fund revenues. Although the court ultimately rejected that argument, it is possible that an appellate court will reach a contrary conclusion. See discussion in sub-section (II)(d), infra. In view of this decision and for purposes of this memo only, we will assume that Amendment One does apply in this context.
[2] Such an interpretation would also be inconsistent with other TABOR provisions. Article X, section 20(9) authorizes local districts to end their subsidies to certain programs delegated to them by the General Assembly for administration, but TABOR expressly excludes from this provision duties with respect to the funding of public education. Consequently, it is clear that TABOR can not be interpreted to allow voters within a county to reject their responsibilities for school finance.