23CA1943 Bonati v KDSW 10-17-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1943
Jefferson County District Court No. 20CV30537
Honorable Diego G. Hunt, Judge

John E. Bonati; Charles A. Bonati, Jr.; and Crystal A. Bonati,

Plaintiffs-Appellees,

v.

KDSW Holdings, LLLP, a Colorado limited liability limited partnership; and
Keith V. Bonati,

Defendants-Appellants.

_____

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

_____

Fennemore Craig, P.C., David M. "Merc" Pittinos, Allison M. Hester, Denver, Colorado, for Plaintiffs-Appellees

Springer & Steinberg, P.C., Christopher S. Maciejewski, Denver, Colorado, for Defendants-Appellants

¶ 1     Defendants, Keith V. Bonati and his entity KDSW Holdings, LLLP (KDSW), appeal the judgment entered against them and in favor of plaintiffs, John E. Bonati, Charles A. Bonati, Jr. (Charlie), and Crystal A. Bonati, and cross-claim defendant, Charles A. Bonati, Sr., and ordering the partition by sale of real property the parties co-own.  We affirm the judgment and remand the case to the district court to award plaintiffs their reasonable attorney fees and costs incurred on appeal in connection with their civil theft claim.

## I.     Background

¶ 2     This case stems from the Bonati family's joint ownership of a 107-acre piece of unimproved land (the property).  The property is geographically diverse and lacks an access road, the previous road having been destroyed by flooding years ago.  A new road has since been built, but the Bonatis have been unable to secure an easement over that road, leaving the property accessible only by foot.

¶ 3     The property was previously owned by Charles,[1] the patriarch of the family.  In 2003, Charles conveyed the property to his four

---

[1] Because the parties in this case share the same last name, we refer to them by their first names, intending no disrespect.  We refer to Charles A. Bonati, Sr., as Charles and Charles A. Bonati, Jr., as Charlie, consistent with the names used in the parties' briefs.

sons — John, Charlie, Keith (through KDSW), and Scott Bonati — as tenants in common, while reserving a life estate for himself. After several transactions over the next two decades, the property is currently owned in various percentages by Charlie, Crystal (Charlie's wife), John, and KDSW. In 2020, Charles conveyed his life estate to those four owners, thus terminating the life estate.

¶ 4 When Charles conveyed the property to his sons in 2003, the brothers discussed sharing the cost of taxes and other expenses associated with the property. But they disagree about whether they reached any agreement. John and Charlie testified at trial that the brothers verbally agreed to pay the property taxes. Keith testified that they did not. Either way, there was no written agreement.

¶ 5 Until 2012, the property taxes were low — approximately $200 per year — and Charles paid them. But in 2012, the annual taxes increased to more than $13,000, and the brothers again discussed sharing responsibility for the taxes. From that point on, one or more of the brothers paid the taxes — but never on time. For the next several years, the family repeatedly missed tax payments, allowed the property to go to tax sales, and redeemed the tax liens.

¶ 6    In 2015 and 2016, with taxes still owed for prior years, Keith (through another entity he owned) purchased the tax liens on the property, and John reimbursed him for half of the purchase price. Charlie later paid Keith and John $25,000 each — Keith for past due taxes and John for contemplated future improvements necessary to sell the property. The plan was for the brothers to acquire title to the property through a treasurer's deed, secure a road access easement, and then prepare the property for sale.

¶ 7    But before the treasurer's deed was issued, Scott thwarted the plan by unexpectedly redeeming the outstanding tax liens, which he could do as a co-owner of the property. As the lienholder, Keith received the redemption payments, which reimbursed him for the amounts he had paid to purchase the liens. John and Charlie, in turn, asked Keith to return the money they had paid him in furtherance of the now-foiled plan. Keith refused to do so. He maintained that the county had incorrectly allowed Scott to redeem the liens, and once it realized its mistake, Keith would need the money to repay Scott and move forward with the original plan.

¶ 8    With the brothers at an impasse, plaintiffs initiated this action to partition the property by sale. Charlie and John also asserted

claims against defendants for unjust enrichment, promissory estoppel, and civil theft based on the money they had paid Keith that Keith had not returned. Defendants asserted counterclaims against plaintiffs and cross-claims against Charles, including for (1) unjust enrichment for taxes and other expenses they had paid; and (2) a partnership accounting under the Colorado Uniform Partnership Act (1997), sections 7-64-401 to -405, C.R.S. 2024.

¶ 9    After a bench trial, the district court ruled for plaintiffs. As relevant to this appeal, the district court (1) found that Charles was not liable for property taxes as the owner of a life estate because the brothers had agreed to pay the taxes; (2) ruled in favor of plaintiffs on their claims of civil theft, promissory estoppel, and unjust enrichment; (3) denied defendants' partnership accounting claim because the parties did not carry on a business for profit under section 7-64-202(1), C.R.S. 2024; and (4) ordered the sale of the property through a mutually agreeable real estate broker.

## II. Standard of Review

¶ 10 Our review of a judgment after a bench trial presents a mixed question of fact and law. *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, 2023 CO 23, ¶ 33. We review the district court's factual findings for clear error and its legal conclusions de novo. *Kroesen v. Shenandoah Homeowners Ass'n*, 2020 COA 31, ¶ 55.

¶ 11 In conducting this review, we defer to the district court's credibility determinations and its assessment of the weight and probative effect of the evidence. *Amos v. Aspen Alps 123, LLC*, 2012 CO 46, ¶ 25; *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 521 (Colo. App. 2011). We will not disturb its factual findings unless they are clearly erroneous and unsupported by the record. *Amos*, ¶ 25.

## III. Responsibility for Property Taxes

¶ 12 Relying on *Dormer v. Walker*, 69 P.2d 1049, 1051 (Colo. 1937), defendants first argue that the district court erred by concluding that Charles was not responsible for the property taxes during the pendency of his life estate. In *Dormer*, the supreme court held that "where the instrument creating the life estate is silent as to [the payment of taxes], it is the duty of the owner of a life estate, who is entitled to receive the rents, issues, and profits therefrom, to keep

5

paid all current taxes and assessments." *Id.* The district court held that the rule in *Dormer* did not apply because (1) the property did not generate any income or profits during the term of Charles's life estate, and (2) the brothers agreed to be responsible for the property taxes after the 2003 conveyance. Because the record supports the district court's second rationale, we need not address the first.

¶ 13 Although *Dormer* sets forth a default rule, the parties may agree to change that rule and allocate responsibility for taxes as they choose. *See Kendall v. Wiles*, 483 P.2d 388, 389 (Colo. App. 1971) (noting parties' agreement that owner of fee title, not owner of life estate, would make all future mortgage, insurance, and tax payments); *cf. Robinson v. Tubbs*, 344 P.2d 1080, 1081 (Colo. 1959) (holding that "the ultimate criterion" for determining whether the life tenant or remainderman is responsible for paying property taxes is "the intention of the creator of these estates as determined from the terms of the instrument creating them") (citation omitted); *Dormer*, 69 P.2d at 1051 (noting that obligation to pay taxes may arise "under the terms of the agreement or by operation of law").

¶ 14 The record supports the district court's factual finding that the brothers agreed that they — not Charles — would be responsible for

paying property taxes after the 2003 conveyance.  Both John and Charlie testified that the brothers reached a verbal agreement in 2003 that they would pay the taxes.  And at least after 2012, when the taxes increased above a de minimis amount, the brothers acted somewhat consistently with that agreement by, individually or collectively, purchasing and redeeming the tax liens — albeit, after failing to pay the taxes on time in the first place.

¶ 15    Indeed, before backtracking at trial, defendants themselves acknowledged such an agreement.  In their counterclaim and cross-claim, defendants alleged that "[w]hen Charles Sr. conveyed the Property to [the brothers], the parties intended that the transferees would share equally in the responsibility for maintenance, taxes, and other expenses."  And they sought a declaration that "the owners of the remainder interests have an implied agreement to share equally responsibility for taxes and costs of maintaining the Property."  Thus, the district court's ruling on this point was consistent with defendants' initial position and requested relief.

¶ 16    Defendants now dispute the existence of such an agreement, characterizing John's and Charlie's testimony as self-serving and contradictory.  They urge us to instead credit Keith's testimony that

7

although the brothers discussed paying the property taxes, they never reached an agreement. But it is the district court's role, not ours, to assess the credibility of witnesses and resolve conflicts in the evidence. *See Highlands Broadway, OPCO, LLC v. Barre Boss LLC*, 2023 COA 5, ¶ 26. The district court did so here and found the testimony that there was a verbal agreement to be "credible." We must defer to that credibility finding. *See Amos,* ¶ 25.

¶ 17     Defendants cite other evidence in the record that could support a contrary finding. For example, they note that Charles paid the property taxes until 2012 and that, once he stopped, the brothers never timely did so. They point to the lack of a written agreement or any reference in the deed to the payment of taxes. They highlight the lack of coordination and equal participation among the brothers in redeeming the tax liens, including Charlie's failure to contribute to the taxes at all until 2018. And they assert that the brothers' inability to agree on *anything* concerning the property undermines any suggestion that they could agree on this.

¶ 18     But these are all factual questions for the district court. We may not reweigh the evidence and substitute our judgment. *See Owners Ins. Co. v. Dakota Station II Condo. Ass'n,* 2021 COA 114,

8

¶ 50. Rather, because there is record support for the district court's factual finding, we will not disturb it. *See Amos*, ¶ 25.

## IV. Civil Theft, Unjust Enrichment, and Promissory Estoppel

¶ 19 Defendants next contend that the district court erred by ruling in favor of plaintiffs on their claims for civil theft, unjust enrichment and promissory estoppel, all arising out of Keith's failure to return the money John and Charlie paid him. We disagree.

¶ 20 Initially, we note that each of these claims concerns the same sums of money and the same set of facts. With each, John and Charlie sought the return of money they paid Keith for property taxes and other expenses because Keith's purchase of the tax liens was reimbursed by another source (Scott's redemption of the lien), and the remaining funds were not used as intended. Thus, the damages for the unjust enrichment and promissory estoppel claims were subsumed in the damages for the civil theft claim (which included treble damages), making any error as to those claims harmless if the civil theft award is upheld. *See Schuessler v. Wolter*, 2012 COA 86, ¶ 63 ("A plaintiff generally may not receive a double recovery for the same wrong."). Regardless, we perceive no error.

## A.    Civil Theft

¶ 21    Defendants assert that the district court clearly erred by finding that they acted with the specific intent to permanently deprive Charlie and John of the benefit of the money they paid him. This is a factual question that we review for clear error. *See In re Estate of Chavez*, 2022 COA 89M, ¶ 47; *Amos*, ¶ 25. We will uphold the district court's finding if it has record support. *Amos*, ¶ 25.

¶ 22    To prevail on a claim of civil theft, a plaintiff must prove two elements: (1) the defendant knowingly obtained control over the plaintiff's property without authorization, and (2) the defendant did so with the "specific intent to permanently deprive the plaintiff of the benefit of the property." *Tisch v. Tisch*, 2019 COA 41, ¶ 51; *see also* §§ 18-4-401(1), -405, C.R.S. 2024. Defendants challenge only the second element.

¶ 23    The district court found that Keith "intentionally took and kept" the specified funds from John and Charlie, "intending to permanently deprive them of those funds." There is support in the record for that finding. The evidence showed that John and Charlie gave Keith money for a specific purpose — John for the purchase of the tax liens and Charlie for taxes and other property expenses —

10

as part of a plan to acquire a treasurer's deed and sell the property. Then, when Scott redeemed the tax liens, thwarting the plan and reimbursing Keith for the amounts he had paid, John and Charlie asked for their money back. But despite their repeated demands, Keith refused. That fact alone supports a finding that Keith intended to permanently deprive John and Charlie of those funds.

¶ 24 Defendants offer several alternative explanations as to why they held onto the funds:

- Keith believed Scott's redemption of the tax liens had been untimely, and once the error was corrected, Keith would be required to repay the redemption amount.

- Keith believed the funds could still be used as intended, and John's and Charlie's demands for return of the funds were contrary to their agreed-upon plan.

- Keith believed that Charlie owed him more in back taxes than Charlie had paid him.

- Keith suffered a severe health crisis that caused him to withdraw from family interactions around the time that John and Charlie were demanding return of the funds.

¶ 25    But at most, these alternative explanations merely offer different reads of the evidence, or other findings the court *could have* made.  The district court's factual finding is not clearly erroneous just because the evidence might also have supported a contrary finding.  *See Casserly v. State*, 844 P.2d 1275, 1281 (Colo. App. 1992) ("A court's findings based upon a choice between two plausible views of the weight of the evidence or upon a choice between conflicting inferences from the evidence is not clearly erroneous.").  Because the district court's finding is supported by the record, that finding is not clearly erroneous.  *See Amos*, ¶ 25.

## B.    Unjust Enrichment

¶ 26    Defendants next argue that the district court (1) applied the wrong legal test to the unjust enrichment claims and (2) abused its discretion by finding in favor of Charlie and John on those claims.

¶ 27    A party claiming unjust enrichment must prove that "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation."  *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008).  In cases involving "failed contracts between close family members or confidants,"

12

malfeasance is not required. *Id.* at 1143. Rather, "when close family members or confidants act with a mutual purpose, unjust enrichment occurs when one party benefits from an action that is a significant deviation from that mutual purpose." *Id.*

¶ 28 Because unjust enrichment is an equitable remedy, we review the district court's ruling on an unjust enrichment claim for an abuse of discretion. *Id.* at 1140-41. We review de novo whether the district court correctly understood the appropriate test. *Id.* at 1141.

¶ 29 Defendants argue that the district court failed to apply the test in *Lewis*. But they do not develop this argument. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12 (declining to consider "undeveloped and unsupported arguments"), *aff'd*, 2021 CO 56. They do not explain how the district court's analysis was inconsistent with *Lewis*. And to the extent they suggest that *Lewis*'s "close family member" refinement of the third unjust enrichment element should apply under the circumstances of this case, they do not develop that point either. *Lewis*, 189 P.3d at 1142. Nor did defendants preserve any *Lewis*-based arguments in the district court. *See Melat, Pressman & Higbie, L.L.P. v.*

*Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18 (declining to address unpreserved issues in a civil case).

¶ 30 In any event, although the district court did not expressly cite *Lewis* or its elements, it effectively applied that test by finding that (1) Keith received and retained money; (2) paid by John and Charlie; (3) even though the parties' plan for those funds had failed. To the extent the *Lewis* test for "close family members" acting with a "mutual purpose" applies, the district court's findings further establish that Keith "benefit[ted] from . . . a significant deviation from that mutual purpose." *Lewis*, 189 P.3d 1134. More specifically, the court found that Keith kept the funds when they could no longer be used for their intended purpose. And although defendants argue that it was John and Charlie who deviated from the parties' mutual purpose by demanding the return of the funds, that was a question of fact for the district court. *See id.* at 1144.

¶ 31 Because the district court applied the correct legal analysis and its findings have record support, the court did not abuse its discretion by finding that Keith had been unjustly enriched. *See id.*

## C. Promissory Estoppel

¶ 32    Defendants lump the promissory estoppel claim in with their challenges to the civil theft and unjust enrichment claims, asserting that the district court abused its discretion by ruling against them on that claim as well. But they do not make any distinct argument with respect to that claim, other than the conclusory assertion that the parties' conduct failed to satisfy the elements of such a claim. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) ("We will not consider a bald legal proposition presented without argument or development."). Even were we to consider this undeveloped claim, we perceive no abuse of discretion. *See La Plata Med. Ctr. Assocs., Ltd. v. United Bank of Durango*, 857 P.2d 410, 420 (Colo. 1993) (reviewing equitable claims for abuse of discretion).

¶ 33    A promissory estoppel claim has four elements: (1) the promisor made a promise; (2) the promisor should have reasonably expected that the promise would induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise to their detriment; and (4) the promise must be enforced to prevent injustice. *Cherokee Metro. Dist. v. Simpson*, 148 P.3d 142, 151 (Colo. 2006).

¶ 34    The district court correctly cited this test and made findings sufficient to satisfy the elements of that claim, albeit not in the terminology of the test. *See Foster v. Phillips*, 6 P.3d 791, 796 (Colo. App. 1999) (noting that findings may be implicit in a court's ruling). The evidence described above provides record support for each of those elements: (1) Keith told John and Charlie he would use their money to purchase the tax liens and pay property taxes so the brothers could acquire a treasurer's deed and sell the property; (2) Keith should have reasonably expected that promise to induce John and Charlie to send him the money; (3) John and Charlie reasonably relied on the promise by sending Keith money; and (4) Keith did not ultimately use the money for the promised purpose. Again, any challenges defendants make to these elements go to the weight of the evidence. *See Saturn Sys.*, 252 P.3d at 521.

## V.    Business For Profit

¶ 35    Defendants next argue that the district court erred by finding that the parties did not carry on a "business for profit," as necessary to form a partnership under section 7-64-202(1). They assert that the brothers engaged in a "business for profit" by paying

16

back taxes and agreeing to share in future expenses for the purpose of eventually selling the property for a profit. We disagree.

¶ 36    A partnership is an "association of two or more persons to carry on as co-owners a business for profit." § 7-64-202(1). A "[b]usiness" is any "trade, occupation, and profession." § 7-64-101(2), C.R.S. 2024. Joint ownership of property "does not by itself establish a partnership, even if the co-owners share profits made by the use of the property." § 7-64-202(3)(a); *see also Brown v. Miller*, 141 P.2d 682, 684 (Colo. 1943) ("[M]ere joint ownership of land does not establish a partnership even though profits are shared . . . .").

¶ 37    The existence of a partnership is a question of fact. *Reid v. Pyle*, 51 P.3d 1064, 1067 (Colo. App. 2002). We thus review the court's factual findings for clear error and will not disturb them if they have record support. *Id.* Whether those facts establish a partnership is a question of law that we review de novo. *Id.*

¶ 38    We agree with the district court that the parties' efforts to preserve their title to the property so they could someday sell it does not constitute a business for profit. First, the property was not used for a "trade, occupation, or profession." § 7-64-101. Rather, the district court found, with record support, that the property was

17

"primarily used for recreation" and generated no income.  Second, the mere act of holding a single piece of property for future sale — and paying property taxes — is not a business.  Most property owners hope to one day sell their property for a profit and know they must pay taxes in the meantime.  That does not, without more, make property ownership a business.  *See* § 7-64-202(3)(a).

¶ 39   We acknowledge that there was some evidence of coordination — or at least attempts at coordination — among the brothers.  But the focus of that coordination was primarily confined to taking care of the back taxes so the family did not lose the property.  Other than some unfruitful discussions about purchasing an access easement, there was no evidence of any other shared expenses.  *Cf. Yoder v. Hooper*, 695 P.2d 1182, 1187 (Colo. App. 1984) (noting that parties contributed an equal amount and intended to share equally in the responsibilities of the partnership), *aff'd*, 737 P.2d 852 (Colo. 1987).  The district court found that the brothers did *not* agree to divide maintenance costs and that any work Keith performed on the property was "gratuitous and not compensable."  To the extent the brothers anticipated sharing in

future profits from the *sale* of the property, that was not so much an agreement as it was a consequence of their joint ownership.

¶ 40 In short, the facts found by the district court establish little more than that the brothers received property from their father and took the minimum steps necessary to retain it. The district court did not err by concluding that was not a business for profit.

## VI. Partition Sale

¶ 41 Defendants' final argument is that the district court abused its discretion by ordering the partition sale to proceed through a real estate broker. Their primary argument appears to be that such a sale is not a "public sale" within the meaning of section 38-28-107, C.R.S. 2024, and thus, was not authorized by statute. We disagree.

¶ 42 Section 38-28-107 provides that "[i]f the commissioners report and the court finds that partition of the property cannot be made without manifest prejudice to the rights of any interested party, the court may direct the sale of such property at public sale upon such terms as the court may fix." In doing so, the court "may make such orders as it may deem necessary to promote the ends of justice to completely adjudicate every question and controversy concerning" the rights and interests in the property. § 38-28-110, C.R.S. 2024.

19

¶ 43    In ordering a partition by sale, the district court expressly rejected plaintiffs' argument that the sale should be private. Instead, the court ordered that "the sale is to be public — that is, not restric[t]ing the parties, their family members, or associates related to these proceedings from participating in the sale." To the extent defendants assert that a sale through a real estate broker, open to any member of the public, is not a "public sale," they do not develop that argument or cite any authority to support it. *See Woodbridge Condo. Ass'n*, ¶ 41 n.12; *see also* 59A Am. Jur. 2d *Partition* § 125, Westlaw (database updated Aug. 2024) (contrasting "public sale" with "private sale," which is "confined to the parties").

¶ 44    Moreover, the district court has discretion to fix the terms of the sale, *see* § 38-28-107, and to "make such orders as it may deem necessary to promote the ends of justice," § 38-28-110. The district court found that a sale through a real estate broker was necessary to "maximiz[e] the sale price of the Property and to prevent the Bonati family members from using a sheriff's sale as a weapon in their ongoing dispute." Given the well-established acrimony among the family, that was a reasonable exercise of the court's discretion.

¶ 45    Defendants make cursory references to other claimed deficiencies in the district court's order, including the failure to appoint a commissioner and the grant of powers to the real estate broker beyond those authorized by statute. But they make no argument on these points. We decline to address an issue presented without argument. *See Barnett*, 252 P.3d at 19. We also will not address arguments raised for the first time in the reply brief. *People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo. 1990), *abrogated on other grounds by Rojas v. People*, 2022 CO 8.

## VII.   Attorney Fees

¶ 46    Plaintiffs request an award of their appellate attorney fees and costs in connection with their civil theft claim under section 18-4-405. Because we affirm the district court's finding of civil theft, we grant this request. *See Black v. Black*, 2018 COA 7, ¶ 130. We exercise our discretion under C.A.R. 39.1 to remand the case to the district court to determine and award plaintiffs their reasonable appellate attorney fees as related to the civil theft claim only.

¶ 47    We deny plaintiffs' request for appellate attorney fees under section 13-17-102(2), C.R.S. 2024. Although defendants did not prevail, we do not view their arguments as so lacking in substantial

justification as to warrant an attorney fee award under that statute. *See In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81.

## VIII.  Disposition

¶ 48    The judgment is affirmed, and the case is remanded to the district court to award plaintiffs their reasonable attorney fees and costs incurred on appeal in connection with their civil theft claim.

JUDGE FOX and JUDGE JOHNSON concur.