TODD HOLDING CO., INC., a Colorado corporation; Toddys of Greeley, Inc., a Colorado corporation; and Toddys of Ft. Collins, Ltd., a Colorado corporation, Plaintiffs–Appellees and Cross–Appellants,

v.

SUPER VALU STORES, INC., a Delaware corporation, Defendant–Appellant and Cross–Appellee.

No. 91CA1779.

Colorado Court of Appeals, Div. C.

July 1, 1993.

Rehearing Denied Oct. 21, 1993.

Petition and Cross–Petition for Certiorari Denied May 23, 1994.

John S. Pfeiffer, Robert E. Warren, Denver, for plaintiffs-appellees and cross-appellants.

Gibson, Dunn & Crutcher, David G. Palmer, Gregory J. Kerwin, Denver, for defendant-appellant and cross-appellee.

Opinion by Judge METZGER.

Defendant, Super Valu Stores, Inc., appeals that portion of the judgment entered on a jury verdict in favor of plaintiffs, Todd Holding Company, Inc. (Todd), and its subsidiaries, Toddys of Greeley, Inc. and Toddys of Ft. Collins Ltd., based upon claims of breach of a confidential relationship. Plaintiffs cross-appeal the trial court's order dismissing certain claims brought under the Colorado Organized Crime Control Act, §§ 18–17–101 to 109, C.R.S. (1986 Repl.Vol. 8B) (COCCA), as time-barred. We reverse and remand for further proceedings.

Todd is the parent corporation of Toddys, corporations that operate supermarkets in Greeley and Ft. Collins. Defendant is a large wholesaler of food products and, between 1983 and 1989, was the primary supplier of grocery products to Toddys.

In 1984, defendant conducted a market survey of the Denver metropolitan area and sold that survey to plaintiffs. This market survey purported to project the market conditions and sales volumes for a supermarket Todd was planning to open and operate in suburban Arapahoe County.

Todd opened and operated its planned supermarket in Arapahoe County for a time, but eventually it was required to cease operations because of lack of profit.

Plaintiffs then sued defendant complaining about two general sets of facts. First, plaintiffs asserted that defendant's failure to disclose, in its market survey or otherwise, that defendant intended to build its own grocery store in the same market area as Todd's proposed store, in direct competition with Todd's store, constituted fraud, breach of contract, and breach of confidential relationship. Second, plaintiffs asserted that, contrary to the terms of their contract, defendant did not sell grocery products to plaintiffs at cost, plus fee, plus freight. Plaintiffs asserted that these facts gave rise to claims for fraud, breach of contract, and breach of confidential relationship.

Plaintiffs did not allege a claim for breach of fiduciary duty. Additionally, plaintiffs asserted joint claims for violation of COCCA.

Defendant denied the allegations and, as to the COCCA claims, raised the affirmative defense that they were barred by the applicable statute of limitations. The trial court agreed with that assertion and dismissed the COCCA claims.

After a three-week trial, the jury returned several verdicts. On the market survey issue, the jury found in favor of plaintiffs and against defendant on the breach of contract claim, assessing damages of $2,708; it found in favor of plaintiffs on the breach of confidential relationship claims, assessing damages of $630,000; and it found in favor of plaintiffs on the fraud claims, assessing damages of $970.50. On the pricing issue, the jury found for defendant on the breach of contract and fraud claims, and it found for plaintiffs on the breach of confidential relationship claims, assessing actual damages of zero and punitive damages of $1,200,000.

After trial, the court, without considering the request for prejudgment interest, entered judgment in favor of plaintiffs in the amount of $633,678.50. Because the actual damages assessed against defendant on the breach of confidential relationship claims based on the pricing issues were zero, the trial court refused to enter judgment for the punitive damages awarded on that claim. This appeal concerns only that portion of the judgment dealing with the confidential relationship claims and the judgment of dismissal of the COCCA claims.

## I.

Defendant contends the trial court erred in submitting the issue of breach of confidential relationship to the jury because Colorado does not recognize this as a separate and distinct cause of action. We agree.

Here, the jury was instructed on the definition of confidential relationship. It was further instructed:

> One who is acting in a confidential relationship owes to the other party the duty to act in good faith and with due regard to the interests of the party reposing the confidence in him.

> If you find in favor of the plaintiffs, you shall award as their actual damages, insofar as they have been proved by a preponderance of the evidence and insofar as they were caused by Super Valu's breach of confidential relationship, an amount which will reasonably compensate the Plaintiffs for their losses, if any, that were directly caused by such a breach.

The jury was not instructed on breach of fiduciary duty.

Plaintiffs chiefly rely on *Nicholson v. Ash*, 800 P.2d 1352 (Colo.App.1990) for support in contending that a claim for breach of confidential relationship is recognized in Colorado. However, in light of the totality of case

law addressing this issue, we conclude that plaintiffs' reading of *Nicholson* is too narrow.

■ A "confidential relationship" arises when one party justifiably reposes confidence in another; thus, it may arise from a multitude of circumstances. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). A "fiduciary duty" may arise from a business or confidential relationship which impels or induces one party to relax the care and vigilance one would and should ordinarily exercise in dealing with a stranger. *Dolton v. Capitol Federal Savings*, 642 P.2d 21 (Colo.App.1981).

■ A claim for breach of a fiduciary duty thus arises when two parties already have a confidential relationship and a fiduciary duty to keep information confidential is breached. *See McFarlan v. District Court*, 718 P.2d 247 (Colo.1986) (relationship exists between attorney and client); *In re Estate of Lopata*, 641 P.2d 952 (Colo.1982) (relationship exists between husband and wife); *Davis v. Board of Psychologist Examiners*, 791 P.2d 1198 (Colo.App.1989) (relationship exists between doctor and patient); *Weeks v. Esch*, 39 Colo. App. 428, 568 P.2d 494 (1977) (relationship may exist between family members giving rise to constructive trusts).

In *First National Bank v. Theos*, 794 P.2d 1055 (Colo.App.1990), this court recognized that the term "fiduciary" and "confidential" are used by many courts synonymously. *See also Degenhart v. Gold King Petroleum Corp.*, 851 P.2d 304 (Colo.App.1993); *Nicholson v. Ash, supra; Meyer v. Schwartz*, 638 P.2d 821 (Colo.App.1981). However, we pointed out that the terms are distinct:

> Violation of a fiduciary duty may result in certain consequences as to transactions between the parties which flow as a matter of law from that relationship. If only a confidential relationship is established, however, such consequences do not automatically flow. The existence of a confidential relationship is simply one of the elements to be considered in determining whether there is fraud, undue influence, overreaching, or other improper conduct.

*First National Bank v. Theos, supra*, 794 P.2d at 1061.

■ Thus, a confidential relationship is merely an element in establishing a fiduciary relationship or some type of fiduciary duty between parties. Accordingly, we conclude that the plaintiffs' reading of the import of *Nicholson, supra*, is misplaced.

The *Nicholson* court dealt with a claim that the defendant had owed the plaintiff a fiduciary duty and that defendant violated that duty by mismanagement. In discussing whether a fiduciary duty existed, the court recognized that the existence of a confidential relationship must be shown. Relying on *Rubenstein v. South Denver National Bank*, 762 P.2d 755 (Colo.App.1988), the court stated that a breach of such relationship gives rise to a cause of action.

However, *Rubenstein* recognizes that a fiduciary duty, *i.e.*, duty not to disclose financial information, must arise out of a confidential relationship. In other words, a confidential relationship must first exist as a condition precedent to there being a fiduciary duty.

Thus, plaintiffs' reliance here on the sole sentence in *Nicholson*, stating that a cause of action could arise from a breach of confidential relationship, essentially puts the cart before the horse.

We note that the court in *Nicholson, supra*, completed its analysis by stating:

> We conclude that, absent the creation of a true fiduciary relationship between two parties to a transaction, representations made by one party to another in conjunction with that transaction will not, without more, give rise to a confidential relationship. While such representations may give rise to claims of relief on other grounds, they cannot alone create a confidential relationship so as to give rise to a fiduciary duty.

*Nicholson v. Ash, supra*, 800 P.2d at 1355.

In our view, this conclusion correctly states the law. Thus, the establishment of a confidential relationship may be an element of other causes of action but a breach of confidential relationship is not a cause of action in and of itself. Hence, the trial court erred in submitting the issue to the jury, and

thus, the portions of the judgment premised on this theory of recovery cannot stand.

## II.

Plaintiffs argue the trial court erroneously dismissed its COCCA claims as being time-barred. We agree.

■ A reviewing court is not bound by a trial court's conclusions of law. *Van Winkle v. Transamerica Title Insurance Co.*, 697 P.2d 784 (Colo.App.1984).

■ The trial court concluded that COC-CA was a penal statute because it appears in the criminal code and because the statute authorizes treble damages. In its determination, the court incorporated the analysis in defendant's brief which relied on *Carlson v. McCoy*, 193 Colo. 391, 566 P.2d 1073 (1977) and *People v. Cerrone*, 780 P.2d 562 (Colo. App.1989), *rev'd on other grounds*, 854 P.2d 178 (Colo.1993). In our view, this reliance was misplaced.

Initially, we note that the holdings of *Carlson* and *Cerrone* are not dispositive of the issue here. *Carlson* dealt with a security deposit statute which created a new cause of action and provided for treble damages without a showing of actual damage. *Cerrone* applied a specific statute of limitations for forfeiture actions. Here, no specific statute of limitations is applicable and the General Assembly has clearly indicated its intention throughout the COCCA statute.

Viewing the COCCA statute as a penal statute, the trial court reasoned that tolling would not occur pursuant to § 13–80–103(1)(d), C.R.S. (1987 Repl.Vol. 6A). However, we disagree with the trial court's premise that § 18–17–107(7), C.R.S. (1986 Repl. Vol. 8B), as used in this context, is a penal statute.

Our supreme court has held that a penal statute creates a new and distinct statutory cause of action and, in contrast to a general punitive damages statute, requires no proof of actual damages as a condition precedent to recovery. *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984).

COCCA does not allow for punitive damages absent an independent showing of actu-al damage. Moreover, the general punitive damages statute, § 13–21–102, C.R.S. (1987 Repl.Vol. 6A), provides for such damages when an injury is attended by circumstances of fraud, malice, or willful and wanton conduct. Treble damages are appropriate when the defendant continues or repeats, *i.e.*, in a pattern, the action which is the subject of the claim.

The activities enumerated under § 13–21–102 are precisely the type of activities contemplated by COCCA. Arguably, if COCCA did not provide for treble damages, a successful plaintiff might still be entitled to exemplary damages under § 13–21–102. The General Assembly has simply streamlined the process.

Additionally, the COCCA statute evinces a legislative intent that it be considered remedial and not penal in nature. Section 18–17–106(9), C.R.S. (1986 Repl.Vol. 8B) provides:

The application of one *civil remedy* under any provision of this article shall not preclude the application of *any other remedy, civil or criminal*, under this article or any other provision of law. *Civil remedies* under this article are supplemental and not mutually exclusive. (emphasis supplied)

Indeed, the General Assembly expressly chose to title § 18–17–105, C.R.S. (1986 Repl. Vol. 8B) "criminal penalties" and § 18–17–106, C.R.S. (1986 Repl.Vol. 8B) "civil remedies."

Moreover, § 18–17–108, C.R.S. (1986 Repl. Vol. 8B) provides that the COCCA statute be liberally construed. This provision is in contradiction to the general proposition that the rule of lenity requires that penal statutes be strictly construed in favor of the accused. *See People v. District Court*, 713 P.2d 918 (Colo.1986).

Because COCCA, used in the civil context, as here, is remedial in nature, its statute of limitations may be tolled until the time of reasonable discovery of the injurious acts. *See* § 13–80–108, C.R.S. (1987 Repl.Vol. 6A).

Therefore, the dismissal of the COCCA claims cannot stand and the matter must be remanded for the trial court to determine the extent to which the limitation period has been tolled.

Because of this disposition, it is unnecessary to address the parties' remaining contentions.

That portion of the judgment relating to the breach of confidential relationship claims is reversed. Also, the judgment dismissing the COCCA claims is reversed, and the cause is remanded for further proceedings on the COCCA claims.

NEY and MARQUEZ, JJ., concur.