Cassandra LEWIS, Petitioner,

v.

Frank LEWIS and Lucy
Lewis, Respondents.

No. 07SC134.

Supreme Court of Colorado,
En Banc.

June 30, 2008.

As Modified on Denial of Rehearing
Aug. 18, 2008.*

---

* Justices Rice, Coats and Eid would grant the petition.

Dietze and Davis, P.C., Joel C. Maguire, Boulder, Colorado, Attorneys for Petitioner.

Michael P. Dugan Greeley, Colorado, Attorney for Respondents.

Justice MARTINEZ delivered the Opinion of the Court.

In this appeal, we review the unpublished opinion of the court of appeals in *Lewis v. Lewis*, 2006 WL 3441766 (Colo.App.2006), which reversed the trial court's judgment. The trial court found that the defendants were unjustly enriched when they failed to compensate the plaintiff for her contribution to a home that was sold for a significant profit. The court of appeals held that unjust enrichment claims present questions of mixed law and fact. Thus, it reviewed the trial court's determination that the plaintiff satisfied the elements of unjust enrichment de novo and reached a contrary result.

We consider whether the court of appeals applied the wrong standard in its appellate review of the trial court's conclusion. We hold that the proper appellate review standard for claims of unjust enrichment is abuse of discretion. However, we also recognize that the trial court must apply the correct test for deciding whether enrichment is unjust.

We hold that claims of unjust enrichment by close family members or confidants should be evaluated by considering the mutual purpose of the parties. To determine unjust enrichment in situations involving a failed gift or failed contract between close family members and confidants, trial courts must determine whether there existed a mutual purpose between the parties. If such a purpose did exist and one party profited from a significant deviation from this mutual purpose, that party is unjustly enriched.

Applying this standard to the present case, we find support in the record for the trial court's determination that the plaintiff's in-laws purchased the home so that their son and daughter-in-law could have the benefits of home ownership. As a consequence, we find that the trial court did not abuse its discretion when it determined that the defendants in the case were unjustly enriched.

## I. Facts and Procedural History

Cassandra Lewis ("Cassandra") asserts that her ex-in-laws were unjustly enriched through the sale of the house where Cassandra and her husband Sammy lived from June 1986 to September 2000. On September 6, 1984, Cassandra and Sammy Lewis were married. Over the next two years, the couple lived with Sammy's parents, Frank and Lucy Lewis ("The Lewises"). After the birth of their daughter in February 1986, Cassandra and Sammy began looking for a place of their own to either rent or purchase. One house they considered was at 403 Division Avenue in Platteville, but on the advice of Frank Lewis, they decided against purchasing it because it needed too much work. Although Frank Lewis discouraged Cassandra and Sammy from buying the property, he and Lucy Lewis surreptitiously purchased the home on May 20, 1986. When Cassandra

and Sammy found out that the Lewises bought the house, the Lewises told them that they meant the purchase to be a surprise gift for Cassandra and Sammy.

Frank Lewis purchased the house for a sale price of $29,500. He made a $5,000 down payment and executed a mortgage to the seller for the balance. The mortgage was calculated over twenty years with monthly payments of principal plus interest of $236.43. Cassandra and Sammy made the monthly mortgage payments, paying $236.46 directly to the Lewises. The Lewises then paid that same amount to the mortgage holder. At trial, Cassandra testified that the Lewises told her "that they put down $5,000 as a gift on the house as a surprise for us." The trial court made a factual finding that the Lewises proposed this arrangement to "ensure that the payments were made because [the Lewises] were concerned that Sammy had a drinking problem and that payments might not otherwise be made on time." The court further found that Cassandra and Sammy faithfully made all the payments for the fourteen years they occupied the house prior to their separation.

In addition to paying the Lewises the mortgage amount due each month, Cassandra and Sammy were named the insureds on the homeowner's insurance policy. The trial court found that Cassandra and Sammy paid the full cost of insuring the house. The trial court also found that when the property suffered a loss, such as hail damage, the insurance benefits were paid directly to Cassandra and Sammy. Cassandra and Sammy paid the real estate taxes, utilities, and all maintenance costs. Each of these bills were mailed directly to Cassandra and Sammy. Likewise, Cassandra and Sammy paid each bill directly to the party owed.

Further, Cassandra and Sammy presented themselves as owners of the property. The trial court made a finding of fact that when hearings were held to determine whether Platteville would put in a new sewer line, Cassandra and Sammy attended the hearings and spoke as the property's owners. They also undertook various improvements to the property. Over the fourteen years in which Cassandra and Sammy lived in the house,

they added carpet, vinyl flooring for the kitchen and bathroom, tiled the laundry room, painted the interior and exterior of the house "a couple of times," removed old wallpaper and put up new wallpaper, replaced light fixtures, vanities, and mirrors, and added ceiling fans in three rooms.

As for the exterior of the house, the trial court found that Cassandra and Sammy first put in a rock driveway and later replaced it with concrete. They put up a chain link fence, installed a satellite dish, and built an above-ground swimming pool. In addition, Cassandra and Sammy cleared space for and installed a basketball court on the property. They also laid new sod.

The trial court made a specific factual finding that at no point did Cassandra and Sammy seek the approval of the Lewises when they undertook these improvements. No evidence was presented and the trial court did not find that the Lewises contributed financially to any of these improvements, aside from some early cleanup work before the house was habitable.

After the birth of their second child in 1992, Cassandra and Sammy began looking for a larger home. The trial court found that during this time, the Lewises told Cassandra and Sammy "that they should not sell the property but should instead rent it out and use the rental income to pay for the new home." Cassandra and Sammy decided to build an addition to the house. The record indicates and the trial court found that the Lewises did not hire the contractor, nor sign the construction contract; rather, Cassandra and Sammy did.

Throughout the fourteen years, the parties made several comments concerning property ownership. Besides putting the title in their name because of Sammy's drinking problem, the trial court found that the Lewises assured Cassandra "that the house was hers and she could live there as long as she wanted." Some years later, Frank Lewis was asked by his six-year-old granddaughter, "Grandpa, when is this going to be our house?" Frank Lewis claimed to have responded that it was her house, as long as her parents paid the rent. Frank Lewis testified

that he told Cassandra the same thing. Cassandra disputed this claim.

The trial court made a factual finding that at one point during the fourteen years in which Cassandra and Sammy occupied the residence, "Frank Lewis went to the County to try to change the title out of his and Lucy Lewis' names and into [Cassandra] and Sammy's." However, when he was told by county officials that he must first refinance the property to put it in Cassandra and Sammy's names, he did not follow through on the title change. Frank Lewis testified that he decided to sell the house to Cassandra and Sammy, presumably for the remaining balance plus the $5,000 down payment, but that sale never occurred.

Frank Lewis further testified that he told Sammy he could purchase the house if he paid back the $5,000 down payment and refinanced the loan to assume the remaining balance owed. Both Lucy and Frank Lewis conceded that while Sammy was aware of this option, Cassandra was never told that the house could be purchased by repaying the down payment.

After sixteen years of marriage and fourteen years living at the Platteville residence, Cassandra, along with her two daughters moved out in September 2000. Less than two months later, on November 22, 2000, the Lewises sold the house to an unrelated buyer for $122,000. The net proceeds from the sale of the house were $108,879.86. Cassandra and Sammy's marriage dissolution was finalized on April 20, 2002. The dissolution did not include reference to the house, and Cassandra received no compensation from the sale.

Cassandra filed suit against the Lewises claiming ownership of the Platteville home. At trial, Cassandra argued that the Lewises gave Cassandra and Sammy the house as a gift and that the court should enforce the gift and give Cassandra and Sammy the house. In the alternative, Cassandra asserted that the court should enforce the parties' mutual desire that the property be sold to Cassandra and Sammy upon payment of the remaining balance of the note and reimbursement for the down payment. However, because Cassandra was unaware of the option to pur-

chase the house before it was sold to the unrelated party, she asserted that the only way to enforce the mutual purpose of the parties and to prevent the unjust enrichment of the Lewises was to place her in the shoes of the seller at the time of the house was sold. Under this theory, she would be entitled to the Lewises net proceeds of $108,879.86 minus the $5,000 down payment.

The Lewises' main argument against Cassandra's ownership claim was that they were renting the property to Cassandra and Sammy for the fourteen years in question. During that time, however, the Lewises neither raised the rent from the original $236.43 nor reported the monthly payments as income. Further, the Lewises did not pay for the refurbishment and updating that is customary when owning rental property. In addition, the Lewises did not claim rental property deductions on their tax returns for any of the fourteen years.

Following the presentation of evidence, the trial court made its ruling from the bench. There was no written order outlining the basis for its findings. The court's two sentence ruling was:

> ORDERED that judgment enter in favor of Plaintiff and against Defendants in the amount of $17,345.37. Plaintiff is also awarded costs.

On the minute order, the court noted that this amount was the difference between the original sale price of the house, $29,500, and the amount owed on the mortgage at the time of the sale, $12,154.63. Cassandra's costs came to $1,411.20.

Cassandra appealed, and the Lewises cross-appealed. Cassandra claimed that the trial court erred when it failed to find in her favor for the entire sale price, minus the existing mortgage and down payment. The Lewises countered that the trial court's partial finding for Cassandra was unsupported by the facts and unreasonable under the applicable law. Upon review, the court of appeals vacated the trial court's judgment on grounds that the trial court's two-sentence order did not contain findings of fact and conclusions of law sufficient to give an appel-

late court a basis by which to undertake a review.

On remand, the trial court made extensive factual findings from the trial record and supporting documents. It explained that its first ruling, awarding Cassandra $17,345.37, was wrong. It then entered a new, different ruling in Cassandra's favor, and explained the legal basis for the new decision.

Among the court's factual findings were the following. The court ruled that Cassandra failed to prove that the house was a gift to her and Sammy from the Lewises. However, the trial court concluded that there was an oral agreement between the parties that allowed Cassandra and Sammy to acquire legal title to the property if they refinanced the loan balance and reimbursed the Lewises for the $5,000 down payment. The trial court further found that in making its first ruling it believed that "although only [Sammy] had actual knowledge of the agreement, [Cassandra] had 'constructive knowledge' of it by her being married to [the Lewises'] son."

In support of its finding that Cassandra and Sammy had the option to purchase the house, the trial court found that the Lewises "had an identical agreement with another son" regarding a different piece of property, adjacent to 403 Division Avenue in Platteville. The court noted that evidence presented at trial "revealed that the other son purchased that property by paying the down payment and paying off the indebtedness," at which point the Lewises conveyed the property to him. The trial court concluded that the Lewises offered the same agreement to Cassandra and Sammy.

After stating its factual findings, the trial court changed its ruling. It stated, "The court concludes that it was in error in its award of damages." The court then awarded Cassandra $103,879.86. This amount was the sale price, $122,000, minus the remaining balance on the note, $12,154.63, and the $5,000 down payment.

To arrive at this holding, the trial court made several further findings and conclusions. First, the court concluded that the Colorado Statute of Frauds, requiring that the agreement to transfer land be in writing, did not apply in the present case. The trial court found that in light of the close familial connection between the parties, there existed a "confidential relationship," which caused each party to "relax their guard that would have otherwise caused them to require that the arrangement be in writing." Second, the trial court found that because of the confidential relationship, the parties' agreement "was not at arm's length." Thus, the Lewises had a duty to deal fairly with Cassandra and Sammy regarding the house. The trial court found that the Lewises violated this duty when they sold the property without informing Cassandra so that they could take advantage of their purchase option.

As a consequence of the Lewises' quick sale of the property, the trial court found that Cassandra was prevented from acquiring the value in the property. Instead, the court concluded that they merely "paid rent and performed maintenance and improvements at their own expense." Conversely, the Lewises "profited from [Cassandra and Sammy]'s efforts in the form of the increased value they received when [they] sold the property." Consequently, the Lewises unfairly benefited from the sale, causing the trial court to conclude that "if it weren't for the special trust relied upon by [Cassandra and Sammy] because of the familial relationship, the agreement would have been reduced to writing or [Cassandra and Sammy] would have chosen to purchase another property instead of continuing to 'rent' from [the Lewises]."

The trial court cited two legal bases for its decision that Cassandra was due the profits from the sale of the house. First, the trial court concluded that Cassandra should recover on a theory of resulting trust. Second, the court determined that Cassandra should recover on a theory of unjust enrichment.

The Lewises appealed Cassandra's award of $103,879.86. The court of appeals held that Cassandra could not recover under resulting trust because there was no express trust, nor did the Lewises intend that a third-party vendor convey the property. Furthermore, the court of appeals found that the Lewises were not unjustly enriched when

they sold the property. The court of appeals stated that "a theory of unjust enrichment is a mixed question of law and fact." Thus, the panel reviewed the trial court's conclusions de novo, finding that Cassandra and Sammy's failure to take advantage of their purchase option before the Lewises sold the property made them mere tenants, without standing to claim an ownership right or an equity loss. As a consequence, the court of appeals concluded that the enrichment of the Lewises by the contribution of Cassandra and Sammy to the property was not unjust. Cassandra Lewis brought this appeal claiming that the court of appeals applied the incorrect standard of review and reached the wrong result when it overturned the trial court's ruling.[1]

We agree with Cassandra. We hold that the court of appeals erred when it held unjust enrichment presents a mixed question of law and fact. The proper appellate review standard for unjust enrichment determinations is abuse of discretion. Thus, we apply the abuse of discretion standard to determine whether the trial court erred in finding that the Lewises were unjustly enriched in the present case.

To analyze whether the trial court abused its discretion, we reexamine the third prong of unjust enrichment and apply it to the specific circumstance presented here.[2] In so doing, we find that claims of unjust enrichment by close family members or confidants require that the trial court employ a particularized legal standard to evaluate the parties' commonality of purpose. When an enriched party deviates significantly from this mutual purpose, resulting in his enrichment at the expense of the close family member or confidant, he has been unjustly enriched.[3]

## II. Standard of Review

■ In reversing the trial court's ruling that the Lewises were unjustly enriched, the court of appeals expressly stated that review of an award for unjust enrichment is a mixed question of law and fact. The court of appeals then reviewed the trial court's findings of fact under an abuse of discretion standard, but reviewed the trial court's "conclusions of law" de novo. In so doing, the court of appeals departed from our case law, which states that "[g]enerally, the power to fashion equitable remedies lies within the discretion of the trial court." *La Plata v. United Bank,* 857 P.2d 410, 420 (Colo.1993) (citing Restatement (Second) of Contracts § 357 (1981) ).

■ Unjust enrichment claims require that courts make extensive factual findings to determine whether a party has been unjustly enriched. *Martinez v. Colo. Dep't of Human Servs.,* 97 P.3d 152, 159 (Colo.App.2003). Because careful consideration of particular circumstances is required in unjust enrichment claims, we have reviewed trial court determinations for abuse of discretion. *La Plata,* 857 P.2d at 420.

Nonetheless, we note that the standard of review for a trial court's holding of unjust enrichment has not been consistently applied. For instance, the court of appeals cites *Ciccarelli v. Guaranty Bank* for the proposition that unjust enrichment presents a mixed question of law and fact. 99 P.3d 85, 89 (Colo.App.2004). *Ciccarelli* cites another court of appeals' case, *Scott Co. v. MK–Ferguson,* 832 P.2d 1000, 1003 (Colo.App. 1991), which in turn cites a Washington state case, *Hensel Phelps Construction Co. v. King County,* 57 Wash.App. 170, 787 P.2d 58 (1990) for this proposition. We find this jurisprudence to be in conflict with this court's ruling in *La Plata.*

In *La Plata,* a lender sued a partnership of doctors over financing of a new medical office building. 857 P.2d at 412. The trial court based an award to the bank on its determination that the bank's estimate of the proper-

---

1. We granted certiorari on the question of "[w]hether the court of appeals applied the appropriate standard of review and reached the correct result on petitioner's unjust enrichment claim when it held unjust enrichment to be a 'mixed question of law and fact' and not a remedy 'at the discretion of the trial court.' "

2. Because there is no question that the Lewises were conferred a benefit at Cassandra's expense, we do not further consider the first two prongs of the unjust enrichment analysis.

3. Sammy is not a party to this action. Thus, we do not consider whether he has any viable claims.

ty's depreciation was more accurate than the estimate put forth by the doctors. *Id.* at 413–14. The doctors appealed, claiming that the trial court did not have discretion to choose one estimate over the other. *Id.* On appeal, we held that trial courts have broad discretion to determine equitable claims of unjust enrichment. *Id.* at 420 (citing *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 166–67 (Colo.1993)); *see also Smith v. Smith*, 172 Colo. 516, 518, 474 P.2d 619, 621 (1970) (holding that when the Colorado Supreme Court is called on to review a matter within the sound discretion of a trial judge, appellate courts will only reverse for clear abuse of that discretion).

▪ Further, in *La Plata* we expressly concluded that "[s]uch rulings will not be disturbed on appeal absent a showing of abuse of discretion." 857 P.2d at 420; *see also Colo. Nat'l Bank*, 846 P.2d at 167. While the discretion at issue in *La Plata* pertained to the trial court's determination of the appropriate remedy, we did not make that distinction before stating that the standard of review was abuse of discretion. Further, we have viewed this discretion as broader than merely devising a remedy. *See Colo. Nat'l Bank*, 846 P.2d at 166–67. When considering equity claims, a trial court's discretion extends to both the factual basis and application of the correct test. Restatement (Second) of Contracts § 357 cmt. c (1981). Thus, while the court of appeals is correct that the trial court's findings of fact are reviewed for abuse of discretion, we do not agree that the trial court's conclusion whether the party was unjustly enriched is simply made de novo by the reviewing court. Instead, the conclusion of the trial court that a party was unjustly enriched is reviewed for abuse of discretion. Because this holding conflicts with the court of appeals' determination in *Ciccarelli* that unjust enrichment creates mixed questions of law and fact, we now overrule that portion of the *Ciccarelli* opinion. *See* 99 P.3d at 88.

▪ We note, however, that the trial court's discretion in equity determinations is not unlimited. Rather, the trial court must apply the appropriate test to determine the existence of unjust enrichment. *Humphrey v.*

*O'Connor*, 940 P.2d 1015, 1022 (Colo.App. 1996). Thus, while equity rulings generally lie within the discretion of the trial court, appellate courts review de novo whether the trial court correctly understood the appropriate test for unjust enrichment. We next discuss unjust enrichment generally, and as it pertains to special factual circumstances.

## III. Unjust Enrichment Between Close Family Members or Confidants

▪▪ A person is unjustly enriched when he benefits as a result of an unfair detriment to another. *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo.2000). The proper remedy upon a finding of unjust enrichment is to restore the harmed party "to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its monetary equivalent." Restatement of Restitution § 1 cmt. a (1937).

▪ The claim of unjust enrichment is a judicially-created remedy designed to undo the benefit to one party that comes at the unfair detriment of another. *Salzman*, 996 P.2d at 1265. Unjust enrichment is based on principles commonly associated with restitution. *DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119 (Colo.1998). "When restitution is the primary basis of a claim, as opposed to a remedy for bargains gone awry, it invokes what has been called a 'contract implied in law.'" *Id.* (citing Joseph M. Perillo, *Restitution in a Contractual Context*, 73 Colum. L.Rev. 1208, 1212–13 (1973)). As such, it is an equitable remedy and does not depend on any contract, oral or written. *See Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1097 (Colo.1982).

We have previously determined that a party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation. *Salzman*, 996 P.2d at 1266–67; *See also DCB*, 965 P.2d at 119–20. We do not question the determination that the Lewises were conferred a benefit at Cassandra's expense. Instead, we turn

our attention to the third prong consideration of whether the enrichment was unjust, which creates difficult questions for trial courts. *See Page v. Clark,* 197 Colo. 306, 314, 592 P.2d 792, 797 (1979). We have not previously addressed this third prong in circumstances similar to the case before us now.[4] However, in a different factual scenario, we found reason to particularize the third prong.

In *DCB,* we enunciated a particularized analysis for the third prong of unjust enrichment when a landlord is sued for unjust enrichment brought about by a tenant. 965 P.2d at 123. There, a contractor, working at the direction of the tenant, made numerous improvements to a historic building. *Id.* at 117–18. When the tenant defaulted on both the construction contract and the lease agreement, the contractor sued the landlord, claiming that the landlord was unjustly enriched by the improvements made to the rental property. We held that, in claims against a landlord, where there is no direct relationship between the landlord and the contractor creating a contract or quasi-contract and the landlord did not act fraudulently, the landlord is not unjustly enriched when he receives a benefit from the failed contract between a tenant and a party working at the tenant's behest. *Id.* at 117. However, we were quick to note that the requirement of malfeasance is specific to a contractor's claim that the landlord was unjustly enriched and did not extend to all unjust enrichment circumstances. *See id.* at 123. We crafted this exception "[b]ecause tenants frequently contract for improvements to leased property, [and therefore] the law must be sufficiently predictable so that the appropriate parties can adequately calculate and make adjustments for the risks they face." *Id.* at 121. As a consequence of *DCB,* trial courts must apply a particularized analysis requiring landlord malfeasance in order to meet the third prong for unjust enrichment. We now consider whether this particularized third prong for unjust enrichment is necessary for claims arising from a close family member or confidant factual scenarios.

The case before us presents the difficult but not altogether uncommon circumstance of a failed gift or failed contract between close family members or confidants, resulting in a claim of unjust enrichment. *See, e.g., Salzman,* 996 P.2d at 1265; *Combs v. Tibbitts,* 148 P.3d 430, 432 (Colo.App.2006); *Wilson v. Prentiss,* 140 P.3d 288, 289–90 (Colo.App.2006); *Martinez,* 97 P.3d at 157; *In re Marriage of Smith,* 7 P.3d 1012, 1016 (Colo.App.1999). By considering the factual basis, the court may better understand the parties' intentions when they entered into the agreement. *Cherokee Metro. Dist. v. Simpson,* 148 P.3d 142, 146 (Colo.2006). However, claims of unjust enrichment arising from the implicit assumptions inherent in an arrangement between close family members or confidants bear little similarity to the circumstance for which we required malfeasance. In *DCB,* the parties to the dispute did not have a direct relationship. The claim arose from a benefit conferred by the contractor to the tenant, from which the landlord ultimately benefited. *DCB,* 965 P.2d at 119. In the circumstance of a failed gift or contract between close family members or confidants, the claim arises from the close relationship, the mutual purpose, and the often ill-defined agreement of the parties. Thus, we do not apply the requirement of malfeasance from *DCB* to the third prong of the test for unjust enrichment to these types of factual circumstances. Instead, claims involving close family members or confidants are a consequence of a significant deviation from the mutual purpose. Thus, we find the need for a particularized third prong analysis for such circumstances.

Claims arising between close family members or confidants, where one party reasonably relies on the assertions of another in absence of a written document stems from a confidential relationship between the parties. *See Todd Holding Co. v. Super Valu Stores,*

---

4. In *Salzman v. Bachrach,* we held that recovery for unjust enrichment was not barred by outdated public policy concerns related to the cohabitation of unmarried adults. 996 P.2d at 1269–1270. Although we then remanded the case for additional factual determinations, we had no reason to confront the issue before us today and did not consider how the third prong determination that enrichment is unjust is analyzed in particular factual circumstances. *Id.*

*Inc.,* 874 P.2d 402, 404 (Colo.App.1993). Such a relationship exists when one party justifiably reposes confidence in another such that the parties drop their guard and assume that each side is acting fairly. *Id.; see also Page,* 197 Colo. at 310, 592 P.2d at 796. A confidential relationship between dealing parties may "impel or induce one party to relax the care and vigilance one would and should ordinarily exercise in dealing with a stranger." *Todd,* 874 P.2d at 404; *see also Dolton v. Capitol Fed. Sav.,* 642 P.2d 21 (Colo.App. 1981). Further, a confidential relationship may serve as indication of fiduciary status. *See McFarlan v. Dist. Court,* 718 P.2d 247 (Colo.1986) (holding that a confidential relationship may exist between an attorney and client); *In re Estate of Lopata,* 641 P.2d 952 (Colo.1982) (holding that a confidential relationship may exist between a husband and wife); *Davis v. Bd. of Psychologist Exam'rs,* 791 P.2d 1198 (Colo.App.1989) (holding that a confidential relationship may exist between a doctor and patient); *Weeks v. Esch,* 39 Colo. App. 428, 568 P.2d 494, 496 (1977) (holding that a confidential relationship may exist between family members giving rise to constructive trusts).

Further, in various familial legal circumstances, we have found that the parties' mutuality of purpose in agreeing to the gift or making the agreement is informative in determining whether one party has been unjustly enriched. *See Denver Found. v. Wells Fargo Bank, N.A.,* 163 P.3d 1116, 1122 (Colo. 2007) (holding that in construing gifts to a trust, the trial court must look to the intent of the settlors); *In re Balanson,* 25 P.3d 28, 37 (Colo.2001) (holding that gifts made by one spouse to another during the marriage are to be considered marital property based on the trial court's determination of the intent of the parties); *Matter of Estate of Jenkins,* 904 P.2d 1316 (Colo.1995) (holding that when considering whether a bequest extends to adopted children, the trial court should look to the testator's intent).

Borrowing from this diverse jurisprudence, we find that the unifying element is the commonality of purpose of the parties. In addition, in other factual circumstances we have looked to the intentions, expectations, and behavior of the parties to determine whether recovery in unjust enrichment is appropriate. *Cablevision,* 649 P.2d at 1098. Consequently, we hold that the parties' actions expressing mutual purpose should govern the third prong of unjust enrichment when trial courts consider situations involving failed gifts or failed contracts between close family members or confidants. In such cases, malfeasance is not necessary to make a claim of unjust enrichment.[5] Instead, we conclude that when close family members or confidants act with a mutual purpose, unjust enrichment occurs when one party benefits from an action that is a significant deviation from that mutual purpose.

Courts considering the third prong of an unjust enrichment claim arising from a confidential relationship should look to the factual support establishing the mutuality of purpose of both the giving and receiving parties. This includes a determination by the trial court of whether both parties' actions indicate that each party possessed the same or similar purpose. In particular, the trial court should consider whether either party acted in furtherance of or detrimentally relied on the gift or agreement. Finally, the court should consider the length of time that the parties acted in furtherance of this misunderstanding. In the event that the parties intended the same outcome or the parties' mutual purpose is easily discernable, the trial court should seek by its equity determination to fulfill this failed mutual purpose when one party benefits from acting in significant deviation with this mutual purpose.

## IV. Unjust Enrichment in the Present Case

Here, the trial court determined that a confidential relationship existed between

---

5. We note that the court of appeals has correctly held that our DCB holding requiring malfeasance applies only in situations where a landlord receives a benefit from a failed contract between a tenant and a party working at the tenant's behest. *Ameriquest Mortgage Comp. v. Land Title Ins. Corp.,* No. 06CA0847, —— P.3d ——, 2007 WL 2128203 (Colo.App. July 26, 2007).

Cassandra and the Lewises. The trial court stated that "[Cassandra] and her husband reasonably relied upon the confidential relationship between the parties in not requiring that the agreement be in writing." Further, in its order on remand, the trial court stated that "if it weren't for the special trust relied upon by [Cassandra] and Sammy because of the familial relationship, the agreement would have been reduced to writing or [Cassandra] and Sammy would have chosen to purchase another property instead of continuing to 'rent' from the [Lewises]." We find no basis in the record to dispute this finding. The record supports the conclusion that Cassandra and Sammy reasonably relied on the close relationship they had with the Lewises. Thus, we find persuasive the trial court's determination that the parties' relationship was confidential, which required that the parties deal fairly with one another.

Because there is no question that the Lewises were enriched by the contributions of Cassandra and Sammy, we turn to the third prong of the analysis, namely whether the Lewises were unjustly enriched when they sold the Platteville property, despite the existence of confidential relationship indicating that the parties' mutual intent was that Cassandra and Sammy have the benefits of home ownership. We find that while the trial court did not express the particularized third prong analysis as we do today, it understood that to reach a finding of unjust enrichment, there must be a deviation from a mutual purpose, and it correctly applied that analysis in ruling for Cassandra.

Specifically, we find that the trial court correctly determined that, in light of the confidential relationship, both parties intended that Cassandra and Sammy obtain full and complete possession of the property. The trial court made factual findings demonstrating that by initially purchasing the Platteville home and encouraging Cassandra and Sammy to live there like owners, the Lewises intended that Cassandra and Sammy enjoy the benefits of home ownership. Further, we find support in the record for the trial court's determination that Cassandra and Sammy acted as though they owned or would own the property, while the Lew-

ises did nothing to counter this perception. For instance, the trial court found that each month Cassandra and Sammy provided a check to the Lewises in the amount of the mortgage. Moreover, the record supports the trial court's conclusion that when routine maintenance was necessary, Cassandra and Sammy performed it themselves or paid others to complete the work. Additionally, the trial court determined that when the house proved too small for their growing family, Cassandra and Sammy constructed an addition to the house. The trial court also found it noteworthy, as do we, that Cassandra and Sammy paid the property taxes on the property, and that the Lewises did not declare the rental property on their income taxes.

These factual findings support the trial court's determination that the parties' mutual purpose in acquiring the home was that Cassandra and Sammy enjoy the benefits of home ownership. The trial court's findings also indicate that Cassandra and Sammy's actions in maintaining and improving the property at their own expense demonstrated this mutual intent. Furthermore, the Lewises presented no evidence and the trial court found no support in the record for the Lewises' claim that Cassandra and Sammy were merely renters. In fact, the trial court found, with adequate support in the record, that the Lewises failed to make any substantive attempt to clarify their ownership claim over the fourteen years in which the parties relied on these assumptions.

In sum, we find support for the trial court's conclusion that the Lewises intended to give Cassandra and Sammy the benefits of home ownership, not reap those benefits for themselves. Consequently, when they sold the house without providing Cassandra the opportunity to assume ownership, the Lewises were unjustly enriched as a result of acting in significant deviation from the parties' mutual purpose. Thus, the trial court applied the correct legal analysis and acted within its discretion in finding that the Lewises were unjustly enriched when the Lewises deviated significantly from the mutual purpose indicated by the parties' actions over the previous fourteen years.

## V. Conclusion

We hold that the trial court acted within its discretion when it determined that the Lewises were unjustly enriched by the sale of the Platteville house. We therefore overturn the decision of the court of appeals and order that the court of appeals reinstate the trial court's ruling in Cassandra's favor for $103,879.86.

Justice EID dissents, and Justice RICE and Justice COATS join in the dissent.

Justice EID, dissenting.

The majority's opinion permits Cassandra to recover the full value of the home owned by the Lewises under a claim of unjust enrichment. In order to reach this result, the majority devises a theory of recovery that enforces the "mutual purpose of the parties." Maj. op. at 1136. The major flaw with the majority's theory is that it bears no resemblance to the unjust enrichment cause of action. I could not find a single reported case in this jurisdiction (or any other, for that matter) that recognized a "mutual purpose of the parties" theory of unjust enrichment. That is because unjust enrichment is not focused on the intent of the parties, as the majority seems to believe, but rather on the benefit conferred, if any, by the plaintiff that is unjustly retained by the defendant. The consequence of the majority's interpretation is that it awards full benefit of the bargain damages—that is, the value of the home—to Cassandra, even though no bargain ever existed. Because I believe the majority's opinion reflects a fundamental misunderstanding of the law of unjust enrichment, I respectfully dissent.

In order to prevail on a claim for unjust enrichment, the plaintiff must show that she conferred a benefit on the defendant "under circumstances that would make it unjust for defendant *to retain the benefit without paying.*" *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 119–20 (Colo.1998) (emphasis added). Thus, the centerpiece of an unjust enrichment claim is the benefit that has been unjustly retained. *Colo. Dep't of Transp. v. Brown Group Retail, Inc.*, 182 P.3d 687, 691 (Colo.2008) (noting that

"[w]hether a party has been unjustly (or unjustifiably) enriched ... becomes an issue only if it has been enriched by receiving a benefit at the expense of another"). Here, the majority makes virtually no attempt to determine whether Cassandra has conferred a benefit on the Lewises, and if so, what that benefit might be; nor does it attempt to quantify that benefit in order to determine what the Lewises may have unjustly "retain[ed] ... without paying." In other words, it makes no attempt to apply the elements of unjust enrichment as they have been traditionally understood in this and other jurisdictions.

Instead, the majority forges a new cause of action for "a failed gift or failed contract between close family members or confidants." Maj. op. at 1142. According to the majority, this new cause of action, as applied to Cassandra, is based on the facts that (1) the parties had an agreement (i.e., a "mutual purpose") to convey the benefits of home ownership to Cassandra and Sammy, (2) the Lewises breached (i.e., "deviated significantly from") that agreement, and (3) Cassandra suffered damages as a result of the breach. *See id.* at 1144. But these are the elements of a claim for breach of contract, not unjust enrichment. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo.1992) (stating elements of breach of contract). The consequence of the majority's flawed analysis is that Cassandra is awarded contract damages where no contract existed.

The trial court calculated damages by subtracting the remaining mortgage and the Lewises' $5,000 down payment from the sale price of the home. Maj. op. at 1139. In other words, the court placed Cassandra in the position she would have been in had there been a contract to transfer ownership of the home to her, including awarding her full expectation damages such as the increase in value of the home due to market conditions. *See Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 251 (Colo.2003) (defining contract damages in terms of expectation damages). But because she does not have such a contract claim, the trial court erred by awarding contract damages, and the majority errs by applying contract principles, under

the guise of unjust enrichment, to uphold the trial court's award.

The majority comes up with its "mutual purpose of the parties" cause of action by "[b]orrowing from ... diverse jurisprudence," including trust and family law. Maj. op. at 1143. Yet it ignores precedent precisely on point in the field of unjust enrichment. For example, in *Salzman v. Bachrach*, 996 P.2d 1263 (Colo.2000), we examined an unjust enrichment claim strikingly similar to Cassandra's. In that case, plaintiff and defendant "agreed to build a home together" to serve as their residence. *Id.* at 1264. Plaintiff designed the home and paid almost $170,000 of the construction costs. *Id.* at 1265. Soon after they moved into the home, plaintiff quitclaimed his interest in the home to defendant, ostensibly so that she could obtain a favorable mortgage on the home and for the tax advantages. *Id.* After a little more than a year of living together in the home, defendant changed the locks and essentially evicted plaintiff. *Id.* Plaintiff brought an unjust enrichment claim against defendant.

In analyzing plaintiff's claim, we did not seek, as the majority does today, to discern a "mutual agreement of the parties," even though there was evidence that they had some sort of an agreement with regard to how the expenses would be shared. *See id.* Instead, we focused on whether plaintiff had conferred a benefit on defendant that was unjustly retained. We concluded that he had. Specifically, we found that he paid "nearly $170,000" toward construction costs of the home and expended considerable effort in "designing the home and managing the project." *Id.* at 1266. On remand, we instructed the trial court to "determine the exact worth of [plaintiff's] contribution [to building the home] to date, and the reasonable rental value for the periods [defendant] lived in the house." *Id.* at 1269–70.[1] In other words, we found that the proper measure of damages would be the net benefit unjustly retained by the defendant—that is, the "exact worth of [plaintiff's] contribution" to the home, less the "reasonable rental value" he would have paid to live there.

Applying *Salzman's* analysis (that is, the elements of unjust enrichment) to the facts of this case, the trial court should have determined what net benefit, if any, Cassandra conferred on the Lewises. For example, over the fourteen years of living in the home, Cassandra and Sammy paid $236 per month to the Lewises to cover the mortgage payment; paid the real estate taxes; paid the costs of maintaining the home, including homeowner's insurance; and paid for various improvements to the home. Maj. op. at 1137. These are costs that Cassandra and Sammy paid that benefited the Lewises. On the other hand, Cassandra and Sammy received a place to live for fourteen years at far below market cost. *See Lewis v. Lewis*, No. 05CA1463, slip op. at 8, 2006 WL 3441766 (Colo.App. Nov.30, 2006) (not selected for official publication). As in *Salzman*, I would instruct the trial court to calculate the net benefit that Cassandra conferred on the Lewises, if any—that is, the benefit she conferred on the Lewises minus the rent she would have paid at market value.[2] This calculation will necessarily require the trial court to determine what portion of the benefit should be attributed to Cassandra, as opposed to Sammy.[3]

1. We cautioned that plaintiff might not be entitled to recover the full value of his contributions to the home "given that the appraised value of the home just prior to completion was considerably less than its cost." *Salzman*, 996 P.2d at 1266 n. 4; *see also Wimp v. Brasher, LLC*, No. 05CA0956, 2006 WL 3028117 (Colo.App. Oct.26, 2006), cert. granted, No. 07SC124, 2007 WL 1898612 (Colo. Jul.2, 2007), cert. dismissed as improvidently granted (Colo. Mar. 7, 2008) (raising the issue of the appropriate measure of damages in an unjust enrichment claim when the benefit conferred through improvements to a home is greater than the value of the home). While we left it to the trial court to quantify the

benefit conferred, there is no question that we instructed the trial court to focus on the benefit conferred.

2. As even the majority recognizes, we must review de novo "whether the trial court correctly understood the appropriate test for unjust enrichment." Maj. op. at 1141. I would find that the trial court did not apply the appropriate test in this case.

3. The majority does not account for the fact that Cassandra and Sammy paid costs jointly. Even under its own analysis, and assuming *arguendo*

Plainly, the effect of today's decision is to untether unjust enrichment from its central focus on the benefit conferred by the plaintiff on the defendant. The majority attempts to gloss over this fundamental shift in unjust enrichment law by stating that "the Lewises intended to give Cassandra and Sammy the benefits of home ownership, not reap those benefits for themselves," the implication being that one of those benefits is the ability to sell a home for profit. Maj. op. at 1144. However, it is irrelevant whether the Lewises intended to convey the benefits of home ownership, or any other benefits, to Cassandra. This is because, as discussed above, the centerpiece of unjust enrichment is the value of the benefit conferred *by Cassandra on the Lewises,* not the other way around. Conse-

quently, the majority's consideration of the benefit intended to be conferred *by the Lewises on Cassandra* turns this fundamental rule on its head.[4]

In sum, the majority's analysis contravenes fundamental principles of the law of unjust enrichment. I therefore respectfully dissent from its opinion.

I am authorized to state that Justice RICE and Justice COATS join this dissent.

---

that the Lewises did indeed intend "to give Cassandra and Sammy the benefits of home ownership," maj. op. at 1141, it follows that Cassandra must share any recovery with Sammy, the other beneficiary of the parties' "mutual purpose." In other words, even under the majority's analysis, Cassandra would not be entitled to recover the full sale price of the home.

4. As our recent decision in *Brown Group* makes clear, in unjust enrichment, "[w]hether a party

has been unjustly (or unjustifiably) enriched ... becomes an issue only if it has been enriched by receiving a benefit at the expense of another." 182 P.3d at 691. Following *Brown Group,* I would find it unnecessary to reach the question that forms the bulk of the majority's opinion— that is, whether the plaintiff must always show malfeasance on the part of the defendant, as required in *DCB Constr. Co. v. Cent. City Dev. Co.,* 965 P.2d 115, 117 (Colo.1998), in order to meet the requirement that retention of a benefit be unjust. *See* maj. op. at 1142.